# IN THE COURT OF APPEALS OF IOWA

No. 14-1694
Filed November 26, 2014

**IN THE INTEREST OF L.P.,**
    **Minor Child,**

**K.P., Father,**
    Appellant,

**S.J., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Stephen C. Clarke, Judge.

A mother and father separately appeal the termination of their parental rights to their son, who was removed from their care at birth. **AFFIRMED ON BOTH APPEALS.**

Theodore R. Stone, Cedar Falls, for appellant-father.

Brett Schilling of Schilling Law Office, P.C., Waterloo, for appellant-mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kathleen A. Hahn, Assistant County Attorney, for appellee.

Timothy M. Baldwin of Juvenile Public Defender Officer, Waterloo, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

L.P. has never lived with his biological parents. Removed from their custody shortly after his birth in January 2014, L.P. has remained in family foster care his whole life. The parents have not visited L.P. since April 2014 because of unresolved substance abuse and mental health issues. In September 2014, the juvenile court terminated the parental rights of both the father and mother, finding "anything short of adoption would be contrary to the best interests of the child."

The father and mother filed separate petitions to appeal the termination order. The father contends the Iowa Department of Human Services (DHS) has not made reasonable efforts to reunite him with his son. Specifically, he argues the DHS had an obligation to seek an involuntary substance abuse commitment to address his methamphetamine addiction. The father also asserts the DHS decision to suspend visitations violated his right to due process. The mother challenges the statutory grounds and argues termination was not in L.P.'s best interest. As a back-up argument, she contends deferral of his permanent placement is preferable to termination of her parental rights.

In a thorough and well-written termination order, the juvenile court concluded: "these parents do not have the skill or ability to provide safely for this child. They have no concept of the care and nurturing a child needs. They cannot care for themselves, nor have they expended any effort to change." Because our review of the record leads us to the same conclusion and we find no

merit to the parents' claims on appeal, we affirm the termination order as to both the father and the mother.

## I.     Background facts and proceedings

L.P.'s parents did not interact well with their newborn son, prompting hospital staff to contact the DHS.  Nurses noted the parents participated in only two of the infant's first twelve feedings.  The hospital staff also expressed concern about the parents' untreated mental health needs, as well as their substance abuse history.  The mother reported using methamphetamine and marijuana four months into her pregnancy.  The father had a criminal history and stayed in a residential facility until 2010.  The parents were homeless until shortly before L.P.'s birth when they moved into a house shared by eight adults and two pit bulls.

On January 24, 2014, the court confirmed L.P.'s removal, stating: "These young parents are in need of many services.  Those services include but are not limited to updated mental health evaluations, updated substance abuse evaluations, couple's counseling and parent education."  The mother acknowledged committing assaults the previous summer when she was not taking her psychotropic medications.  The father had a prior conviction for domestic abuse, and his behavior at the hospital was described as "erratic, belligerent and paranoid."

The juvenile court adjudicated L.P. as a child in need of assistance (CINA) on February 18, 2014.  The court directed the parents to obtain updated mental health and substance abuse evaluations, and to participate in FSRP (family

safety, risk, and permanency) services, as well as any other services deemed helpful to achieve reunification with their son.

The parents made little progress over the next few months. They missed many visits scheduled with L.P. When they did attend visits, the mother was unsure how to handle the infant, while the father was more comfortable with the interactions. Parenting skills education was an expectation set by the court soon after L.P.'s removal, but the parents had only attended a single class by the time of the termination hearing in August 2014.

The parents also failed to regularly attend L.P.'s medical appointments when he was being treated for RSV bronchiolitis in February and March. In March, the foster parents observed L.P. having tremors, which doctors attributed to his exposure to methamphetamine in utero. The parents did not attend the doctor's appointment assessing the infant's neurological damage because they were "coming down from meth."

Drug abuse continued to hamper the parents' efforts at reunifying with L.P. The father tested positive for methamphetamine on February 7, 2014. The mother tested positive for methamphetamine on March 14 and March 25. Both parents completed substance abuse evaluations on March 20, 2014, but did not follow through with recommended treatment. Neither has participated in drug testing since April 2, 2014.

The DHS temporarily suspended the parents' visits with L.P. on April 25, 2014, because their continuing drug use appeared to be triggering a physical reaction in their son. L.P. was extremely fussy during visits with his parents. The

foster parents told the case worker L.P. continued to cry after visits, until he was bathed and dressed in clean clothes. The case worker testified: "it was our impression that he was having a physical reaction to the parents coming to the visits either under the influence of substances or not appropriately showering or getting it out of their system and so that skin-to-skin contact was having a physical impact on [L.P.]." The case worker told the parents if they complied with drug testing and demonstrated that they were "clean," the visits would be reinitiated.

In addition to their methamphetamine addictions, both parents struggled with other mental illnesses. The mother and father participated in psychological evaluations in April 2014. The mother's diagnoses included methamphetamine abuse; schizophrenia disorder, paranoid type; unspecified mood disorder; attention deficit/hyperactivity disorder; negativistic, codependent personality traits and neglect of child. The mother testified she agreed with some of the mental health diagnoses, but disagreed with the majority of them. She also testified the doctor prescribed medications for her mental health conditions, but she was not taking them because her Medicaid was "deactivated."

The father's diagnoses included methamphetamine use; negativistic, self-defeating and depressive personality traits; generalized anxiety disorder; major depressive disorder, moderate, recurrent; unspecified psychotic disorder; attention deficit/hyperactivity disorder; neglect of child; and partner relational problems. The father testified the psychological evaluation was "a joke" and he disagreed with the diagnoses. The father admitted being addicted to

methamphetamine, but he did not believe the addiction affected his personality, saying he was just "really, really irritated" because he did not like having his son "taken away."

The State filed petitions to terminate parental rights on July 31, 2014, alleging grounds existed under Iowa Code sections 232.116(1)(e), (h), (k), and (*l*) (2013). At a termination hearing on August 28, 2014, the court heard testimony from the DHS case worker, the FSRP worker, the mother, and the father. At the end of the hearing, the attorneys for both parents asked the court to defer permanency for L.P. while each parent worked to "get their life on track."

On September 24, 2014, the juvenile court rejected the parents' requests for more time and granted the State's petitions to terminate parental rights, relying on sections 232.116(1)(e),[1] (h)[2] and (*l*).[3] The parents now appeal.

---

[1] Under this paragraph, the court may order termination if: (1) the child has been adjudicated CINA, (2) the child has been removed from the physical custody of the child's parents for a period of at least six consecutive months, and (3) there is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.

[2] Under this paragraph, the court may order termination if: (1) the child is three years of age or younger, (2) the child has been adjudicated CINA under section 232.96; (3) the child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days; and (4) there is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

[3] Under this paragraph, the court may order termination if: (1) the child has been adjudicated a CINA pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102; (2) the parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts; and (3) there is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

## II. Legal analysis

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110–111 (Iowa 2014). We give weight to the juvenile court's fact findings and credibility assessments, but they are not binding on our decision. *Id.* We may uphold a termination order if the State has offered clear and convincing evidence supporting a ground for termination under Iowa Code section 232.116. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence qualifies as "clear and convincing" if no serious or substantial doubts exist as to the conclusions of law or the correctness of the conclusions drawn from it. *Id.*

In terminating parental rights, Iowa courts follow a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, the court must determine if the State has established a ground for termination under section 232.116(1). *Id.* Second, if the evidence satisfies the statutory elements, the court must apply the best-interest framework set out in section 232.116(2). Third, if the statutory best-interest framework supports termination, the court must consider if any factors in section 232.116(3) serve to preclude termination of parental rights. *Id.*

### A. Termination of the mother's relationship with L.P.

The mother challenges the first and second steps of the juvenile court's analysis. She contends the State did not meet its burden to prove all elements under paragraphs (e), (h) or (*l*). She also argues termination was not in L.P.'s best interest because she has bonded with the child. If we reject those claims, in the alternative, she asks for additional time for reunification.

We turn first to the statutory grounds for termination. When the juvenile court terminates parental rights based on several subdivisions of section 232.116(1), we may affirm the order on any ground we find supported by the record. *D.W.*, 791 N.W.2d at 707. In this case, we find the juvenile court properly based its termination on paragraph (h). The mother does not dispute L.P is younger than three, has been adjudicated CINA under section 232.96, and has been out of her custody for six consecutive months. Instead she focuses on the fourth element, that L.P. cannot be returned to her custody as provided in section 232.102 at the present time. Iowa Code § 232.116(1)(h). The mother asserts on appeal that she and the father have a "living arrangement available to them" and claims her parenting skills have improved recently because she has had a "babysitter-type role" with another child in the household.

We are not persuaded by the mother's argument. The living arrangement she refers to is a spare room in the home of the father's ex-partner and that partner's new husband and her children. Even if the mother is gaining skills in child care, she has not demonstrated those with her own son because she has not taken the initiative to undergo drug testing since April. The mother's argument does not address the fundamental impediments to reunification, which are the unresolved drug addictions and mental health challenges faced by both her and L.P.'s father. A child cannot be safely placed in the home of a methamphetamine addict who is actively using. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012).

L.P. has been away from his parents since he was born. The record shows he could not be returned to the care of his parents at the time of the hearing. We find clear and convincing evidence the State established grounds for termination of the mother's parental rights under Iowa Code section 232.116(1)(h).

After we decide a statutory ground for termination exists, we still must determine if termination is in the child's best interests. Iowa Code § 232.116(2); see P.L., 778 N.W.2d at 39. In evaluating this issue, we first consider the child's safety, and then assess what would be "the best placement for furthering the long-term nurturing and growth of the child, and . . . the physical, mental, and emotional condition and needs of the child." P.L., 778 N.W.2d at 39 (quoting Iowa Code § 232.116(2)). The mother argues termination of her parental rights was not in L.P.'s best interests because they "have bonded with one another."

At the time of the August 2014 hearing, the mother had not had a visit with L.P. for four months because the mother had not complied with the DHS requirement for drug testing. It is hard to assess whether the mother continued to have a bond with L.P. after such a gap in contact. But bond or not, the child's safety is our primary consideration when evaluating best interests. The record shows the mother is not a safe custodian for L.P. As the juvenile court observed: "The child has been placed in a concurrent home where he is loved, nurtured, and his safety is not in question." On these facts, we find termination of the mother's parental rights was in L.P.'s best interests.

Finally, as an alternative, the mother asks that she and the father "be given additional time to work on the requests of the Department of Human Services through a deferral of permanency in this matter." Iowa Code section 232.104(2)(b) sets forth the option of continuing placement after a permanency hearing, allowing the juvenile court to

> [e]nter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

To continue placement for six months, the statute requires the court to determine the need for removal will no longer exist at the end of the extension. *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). The juvenile court could not make such a determination on this record. Neither parent has embraced any behavioral changes that would promote stability in their general mental health conditions, or specifically as to their drug addictions. Six more months would not put them in the position to be safe parents. Accordingly, we affirm the termination of the mother's parental rights.

**B.  Termination of the father's relationship with L.P.**

The father argues the DHS fell short of its obligation to make reasonable efforts to unify the family in two ways. First, the father contends the DHS should have pursued an involuntary substance abuse commitment against him. Second, he claims the DHS did not make reasonable efforts in ensuring ongoing visitations between the parents and L.P. We will address each claim in turn.

The DHS is required to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The reasonable-efforts concept focuses on services to improve parenting. *C.B.*, 611 N.W.2d at 493. But it also includes visitation designed to facilitate family reunification while protecting the child from harm. *Id.* Our supreme court does not interpret the reasonable-efforts mandate as a strict substantive requirement that must be satisfied before a parent's rights may be terminated. *See id.* Instead, the State must show reasonable efforts by the DHS as a part of its ultimate proof the child cannot be safely returned to the care of a parent. *Id.*

We turn first to the father's argument concerning an involuntary commitment. The father testified he was a methamphetamine addict. When asked what it would take for him to "get off meth," he responded: "It would probably take finding a job and getting the hell out of this town." The juvenile court noted in its termination decision that the father was "emaciated and fidgety" during his testimony. The DHS case worker testified she encouraged the father to pursue in-patient drug treatment, but he resisted, saying "he already knew what he needed to do" which was to get a job and then he would stop using. The worker did not believe reasonable efforts encompassed pursuing a substance abuse commitment against a parent, and testified that DHS supervisors have advised: "that's not our position to commit individuals to treatment." On appeal, the father asserts "it is unreasonable to expect a drug addict to seek help on his or her own."

We decline to hold the DHS had an obligation to commence proceedings for involuntary commitment or treatment under Iowa Code section 125.75 for the parent of a child adjudicated CINA as part of its reasonable-efforts requirement. Our court has previously, in an unpublished opinion, rejected a similar claim that the DHS should have pursued a substance abuse commitment because it was unreasonable to expect an addicted parent to seek help on his or her own. *See In re T.F.*, No. 03–0500, 2003 WL 21076398, at *1–2 (Iowa Ct. App. 2003).

While the State is required to provide reasonable reunification services, parents have an obligation "to demand other, different or additional services prior to the termination hearing." *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). In this case, the DHS offered reasonable services aimed at helping the parents confront and overcome their addictions, including random drug testing, substance abuse evaluations, and treatment options. The father submitted to drug testing only three of nineteen possible times. The father refused to participate in in-patient treatment and attended only a couple of sessions of extended outpatient treatment. His appellate argument that the DHS should have pursued *involuntary* commitment does not square with the settled principle that parents must *demand* the services they believe will help eliminate the need for removal of their child. Accordingly, we decline to grant the father relief on this argument.

We turn next to his argument that reasonable efforts were not made to ensure visitation between parent and child. The father claims he was denied due process by the DHS decision to curtail visitation based on "unsupported"

allegations L.P. suffered a physical reaction to methamphetamine on the parents' clothing or skin during visits. The father does not cite any cases or provide any analysis to support his due process claim, nor does he explain how he preserved error on that constitutional issue. "Constitutional questions must be preserved by raising them at the earliest opportunity after the grounds for objection become apparent." *In re C.M.*, 652 N.W.2d 204, 207 (Iowa 2002). The father did not preserve error on his due process claim and we do not consider it.

On the statutory claim that the DHS breached the reasonable-effort requirement by suspending visitation, we reject the father's position. The parents continued to use methamphetamine after the removal of their child. An addiction to methamphetamine is antithetical to safe parenting. *See In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) (explaining a juvenile court could reasonably determine parent's active addiction to methamphetamine was "imminently likely" to result in harmful effects to the physical wellbeing of the child in the parent's care). The foster parents and FSRP worker noted L.P. was unusually fussy during some visits with the parents, cried uncontrollably after those visits, and only obtained relief after being bathed and dressed in clean clothes. This evidence supported the DHS decision to suspend visits until the parents could show they were not exposing their child to second-hand methamphetamine residue. The DHS advised the parents that if they provided clean drug screens, they could resume visits with their son. The parents had refused to submit to drug testing since April, knowing their refusal would mean not seeing L.P. The father is complaining of a self-inflicted wound.

For the reasons detailed above, we affirm the juvenile court's decision terminating the parent-child relationship between L.P. and his mother and father.

**AFFIRMED.**