**In the Interest of C.M., Jr., a Minor Child,**

**D.A., Mother, Appellant.**

No. 02–0304.

Supreme Court of Iowa.

Oct. 9, 2002.

[Page content redacted]

Letitia A.W. Turner, Assistant State Public Defender, for appellant mother.

Amy D. Van Es, Mason City, guardian ad litem for minor child.

Thomas J. Miller, Attorney General, M. Elise Pippin, Assistant Attorney General, Paul L. Martin, Cerro Gordo County Attorney and Gregg Rosenbladt, Assistant County Attorney, for appellee State.

TERNUS, Justice.

This case involves a termination of parental rights under Iowa Code section 232.116(1)(*g*) and (*d*) (2001). The parents of the minor child, C.M., appealed, and the court of appeals affirmed the termination. Upon the mother's application, this court granted further review for the sole purpose of addressing the constitutionality of the appellate procedures that governed her appeal.[1] The appellant specifically complains that she was limited to raising her claims of error in a petition on appeal rather than in a traditional brief. Upon our consideration of the arguments of the parties, we hold that the failure of the Iowa Rules of Appellate Procedure to provide an opportunity for full briefing in all termination cases does not violate a parent's constitutional rights to equal protection and due process.

I. *Preservation of Error.*

The appellant did not challenge the constitutionality of the governing rules in her petition on appeal. Constitutional questions must be preserved by raising them "at the earliest opportunity after the grounds for objection become apparent." *State v. Yaw,* 398 N.W.2d 803, 805 (Iowa 1987); *accord State v. Wages,* 483 N.W.2d 325, 326 (Iowa 1992). Once the appellant filed her notice of appeal, the procedures at issue were applicable. Consequently, a challenge to the constitutionality of those procedures could have been made in the petition on review filed by the appellant. Having failed to include her constitutional claims in her petition, those issues are not preserved for review.

Anticipating an error preservation problem, the mother asserts counsel rendered ineffective assistance by failing to raise the constitutional issues earlier. *See generally In re A.R.S.,* 480 N.W.2d 888, 891 (Iowa 1992) ("The test for ineffective assistance of counsel in termination cases is generally the same as in criminal proceedings."). The elements of an ineffective-assistance claim are (1) counsel's performance was deficient, and (2) actual prejudice resulted. *Id.* If either element is not proved, the claim of ineffective assistance of counsel fails. *State v. Pace,* 602 N.W.2d 764, 774 (Iowa 1999).

Counsel has no obligation to raise an issue that has no merit. *See State v. Ceaser,* 585 N.W.2d 192, 195 (Iowa 1998) (stating "counsel is not incompetent in failing to pursue a meritless issue"). Because we determine the expedited appellate procedures do not violate the appellant's rights to procedural due process or equal protection, we likewise conclude counsel's failure to challenge the procedures on these bases did not constitute deficient legal representation. Therefore, the appellant cannot avoid her failure to preserve

1. Notwithstanding the limited purpose for which further review was granted, this court has reviewed de novo the other arguments made by the mother in support of her request that the termination order be reversed. We agree with the court of appeal's decision on these matters and do not think an extended analysis of these issues in this opinion is necessary or would be helpful. Therefore, we confine our discussion to the constitutional challenges made to the procedure governing the appeal of termination orders.

error on the basis of her counsel's allegedly ineffective representation.

Although error has not been preserved, it is still necessary to address the merits of the constitutional challenges as a component of the appellant's ineffective-assistance-of-counsel claim. We begin our analysis with a review of the applicable appellate rules.

II. *Appellate Procedures.*

Iowa Code section 232.133 governs appeals from juvenile court orders, including orders terminating parental rights. Prior to July 1, 2001, it stated that "[t]he procedure for such appeals shall be governed by the same provisions applicable to appeals from the district court provided that when such order or decree affects the custody of a child the appeal shall be heard at the earliest practicable time." Iowa Code § 232.133(2). Effective July 1, 2001, this statute was amended to add the following sentence: "The supreme court may prescribe rules to expedite the resolution of appeals from final orders entered pursuant to section 232.117." Iowa Code § 232.133(2) (Supp.2002); *see also id.* § 232.117 (addressing disposition of termination-of-parental-rights proceedings).

The impetus for this amendment is a heightened concern at the federal level that permanency for children be accomplished as soon as feasible. The federal effort to encourage prompt resolution of termination proceedings was recently discussed by this court:

> Our laws relating to the welfare of children have been driven for the last twenty-five years by policies and laws generally developed at the national level. Under the Adoption Assistance and Child Welfare Act of 1980, Public Law 96–272, 94 Statutes 500 (codified as amended in scattered sections of 42 U.S.C.), the concept of family preservation was established with a goal of reuniting children with their families after reasonable efforts by social services. Congress mandated services for families and children under the threat of ineligibility for federal matching funds to accomplish this goal....
>
> ....
>
> Recently, the reasonable efforts requirement has undergone some transformation. This is because the family preservation concept [that] guided our federal national policy for the last two decades was found to be detrimental to children in some cases. Consequently, the Adoption and Safe Families Act of 1997, Public Law 105–89, 111 Statutes 2115 (codified as amended in scattered sections of 42 U.S.C.), now broadens the focus of reunification to place greater emphasis on the health and safety of the child, and *mandates a permanent home for a child as early as possible. See* 42 U.S.C. § 675(5)(C).... In response, our legislature recently enacted amendments to our comprehensive juvenile justice act to permit waiver of reasonable efforts when aggravating circumstances exist. These amendments ... recognize a child's right to appropriate custodial care *and the important element of time.*

*In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (citations omitted) (emphasis added). Thus, the new federal law shifted the focus from family reunification to "time-limited family reunification services." *See* 42 U.S.C. § 629(a)(7).

In response to these developments, the Iowa Supreme Court adopted amendments to the Iowa Rules of Appellate Procedure to expedite the disposition of termination appeals. In relevant part, the rules now provide that the appellant in a termination case has fifteen days within which to file a notice of appeal, as opposed

to thirty days in other appeals. *See* Iowa R.App. P. 6.5(2). In addition, the amended rules require the appellant's trial counsel to prepare a petition raising issues for appeal rather than arguing issues in a traditional appellant's brief. *See* Iowa Rs. App. P. 6.6(4), 6.151.[2] The petition on appeal must be filed within fifteen days of filing the notice of appeal, *see* Iowa R.App. P. 6.6(4), and the opposing party then has fifteen days to serve a response, *see* Iowa R.App. P. 6.152(1). Relying on the appellant's petition on appeal, any response to the petition, the juvenile court record, and the trial transcript, the appellate court then conducts a de novo review of the trial court's termination order. Iowa R.App. P. 6.154(1). At that point, the appellate court may "affirm the juvenile court decision, reverse the juvenile court decision, remand the case to the juvenile court, or set the case for full briefing pursuant to rules 6.13 and 6.17 or as directed by the court." Iowa R.App. P. 6.154(1). Thus, full briefing becomes available *only* at the option of the reviewing court. Moreover, refusal by the court of appeals to grant full briefing is not grounds for further review by this court. Iowa R.App. P. 6.154(2).

III. *Scope and Standard of Review.*

The mother challenges the new appellate procedure on two grounds: equal protection and procedural due process. Review of constitutional claims is de novo. *Santi v. Santi,* 633 N.W.2d 312, 316 (Iowa 2001). The party claiming the statute is unconstitutional must "negate every reasonable basis upon which the statute could be upheld." *Bowers v. Polk County Bd. of Supervisors,* 638 N.W.2d 682, 688 (Iowa 2002).

IV. *Equal Protection.*

A. *Appellant's argument.* The mother asserts the new appellate procedures impermissibly distinguish between classes of appellants without a legitimate state purpose. More specifically, she claims the use of a petition on appeal in lieu of full briefing violates her right to equal protection of the law by restricting her access to the appellate courts in comparison to appellants in other civil and criminal cases. She states: "To permit the victim of a broken

2. Iowa Rule of Appellate Procedure 6.6(4) provides in pertinent part: "To perfect an appeal filed pursuant to rule 6.5(2) [an appeal in a chapter 232 termination case], the appellant must also file with the clerk of the supreme court a petition on appeal in conformance with rule 6.151." Rule 6.151 provides in pertinent part:

**6.151(2)** *Elements.* The petition on appeal shall include all of the following elements:

*a.* A statement of the nature of the case and the relief sought.

*b.* The date the judgment or order for which review is sought was entered.

*c.* A concise statement of the material facts as they relate to the issues presented in the petition on appeal.

*d.* A statement of the legal issues presented for appeal, including a statement of how the issues arose and how they were preserved for appeal. The issue statements should be concise in nature setting forth specific legal questions. General, conclusory statements such as "the juvenile court's ruling is not supported by law or the facts" are not acceptable.

*e.* The petition should include supporting statutes, case law, and other legal authority for each issue raised, including authority contrary to appellant's case, if known.

*f.* The petition on appeal shall have attached to it: (1) a copy of the petition (and any amendments) for termination of parental rights filed in the juvenile court proceedings; (2) a copy of the order, judgment, or decree terminating parental rights or dismissing the termination petition; and (3) a copy of any rulings on a motion for new trial as provided in Iowa R. Civ. P. 1.1007 or a motion as provided in Iowa R. Civ. P. 1.904(2).

contract to fully participate in an appeal by filing a full brief with argument while prohibiting a mother seeking to preserve her right to be a part of her child's life from doing the same is not a logical nor legitimate distinction and serves no legitimate state purpose."

B. *Applicable legal principles.* The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The principles of law governing equal protection claims are well established:

> The Equal Protection Clause requires that similarly-situated persons be treated alike. "If people are not similarly situated, their dissimilar treatment does not violate equal protection." Any government classification of persons, however, "must meet the applicable constitutional standard imposed under the Equal Protection Clause." Unless a suspect class or a fundamental right is involved, any classification made by the legislature need only have a rational basis.

*Bowers,* 638 N.W.2d at 689 (citations omitted). When, however, "the challenged statute classifies persons in terms of their ability to exercise a fundamental right or when it classifies or distinguishes person by race or national origin," the State must show "that the classification is narrowly tailored to serve a compelling government interest." *In re Detention of Williams,* 628 N.W.2d 447, 452 (Iowa 2001).

"The first step in any equal protection analysis is to determine what level of scrutiny applies." *Id.* Based upon the arguments made by the mother in her brief, it appears she has evaluated the appellate rules under a rational basis test, so we are free to apply that level of scrutiny. *See In re Detention of Morrow,* 616 N.W.2d 544, 548 n. 1 (Iowa 2000). Indeed, to the extent the new rules impact a party's right to appeal, a rational basis standard would govern. That is because the right to appeal is not a fundamental right, nor even a constitutional right. *See Abney v. United States,* 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651, 657 (1977); *State v. Hinners,* 471 N.W.2d 841, 843 (Iowa 1991). Notwithstanding the fact that appeals are purely statutory in Iowa, "once the right of appeal has been established, 'these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts.'" *Hinners,* 471 N.W.2d at 843 (quoting *Rinaldi v. Yeager,* 384 U.S. 305, 310, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577, 581 (1966)).

Despite the mother's apparent concession that a rational basis test applies, we have some concern that a higher level of scrutiny may be required. Because the new rules classify appellants based on whether or not they are involved in a termination-of-parental-rights case, one could argue that the classification impacts a parent's fundamental right to the care, custody, and control of his or her child. *See Santi,* 633 N.W.2d at 317 (stating that "status of parents' interest in the care, custody, and control of their children ... [is] 'perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court'" (quoting *Troxel v. Granville,* 530 U.S. 57, 65–66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49, 56 (2000))). If strict scrutiny were mandated, then the State would have the burden to show the classification was narrowly tailored to serve a compelling governmental interest. *In re Detention of Williams,* 628 N.W.2d at 452. We find it unnecessary to decide which level of scrutiny applies, because even if the more stringent test is required, that test is met.

C. *Discussion.* The State has the duty "to assure that every child within its borders receives proper care and treatment, and must intercede when parents fail to provide it." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). This duty includes an obligation to establish child custody quickly so that children do not "suffer indefinitely in parentless limbo." *Id.* The best interest of the children who are the subject of the termination proceeding is the State's primary concern, *see In re C.B.*, 611 N.W.2d at 492, and this court has recognized that delays in the resolution of termination cases is "decidedly antagonistic to the children's best interest," *In re A.C.*, 415 N.W.2d at 615. The recent federal legislation mandating a permanent home for a child as early as possible, *see* 42 U.S.C. § 675(5)(C), simply emphasizes the need for prompt disposition of such cases. We think the State's interest in obtaining a permanent home for a child as soon as possible is a compelling governmental interest.

We also conclude that the expedited procedure embodied in the appellate rules is narrowly tailored to address the State's compelling interest. The prompt resolution of appeals in termination cases directly impacts the State's ability to fix custody quickly. And, while the appellate procedure under the new rules is streamlined, the reviewing court's ability to thoroughly appraise the legality of the termination order is not compromised. The appellant is given a full opportunity to identify issues for review. The reviewing court has the entire juvenile court record and transcript before it when evaluating the merit of the issues raised by the appellant. And, finally, if additional analysis by the parties would be helpful, the appellate court has the ability to order full briefing. Thus, the procedures providing for an expedited review of termination orders is narrowly tailored to advance the State's interest in providing a permanent placement for children as soon as reasonably possible. There is no equal protection violation.

V. *Due Process.*

The mother also contends the new appellate procedure deprives her of an opportunity to fully participate in the appeal of a termination case and therefore constitutes a denial of due process under the federal and state constitutions. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Iowa's Due Process Clause is virtually identical. *See* Iowa Const. art. I, § 9. We have generally interpreted our Due Process Clause to be identical in scope, import, and purpose to the federal clause. *Bowers*, 638 N.W.2d at 690.

This court has recently summarized the principles of law governing a procedural due process claim.

> A person is entitled to procedural due process when state action threatens to deprive the person of a protected liberty or property interest. Procedural due process requires that before there can be a deprivation of a protected interest, there must be notice and opportunity to be heard in a proceeding that is "adequate to safeguard the right for which the constitutional protection is invoked."

*Id.* at 690–91 (citations omitted). Thus, our first step is to determine whether a protected liberty or property interest is implicated in the challenged rules. *Id.* Clearly, a protected liberty interest is implicated. The procedure at issue here arises in the context of a termination proceeding and therefore threatens to deprive the appellant of her liberty interest in the care, custody and control of her child. *Id.*

at 691 (stating that protected interests include those created by the federal constitution).

Because a protected interest is involved, we must decide what procedure is constitutionally required. *Id.* We do so by balancing three competing interests: (1) the private interest affected by the proceeding; (2) the risk of error created by the procedures used, and the ability to avoid such error through additional or different procedural safeguards; and (3) the countervailing governmental interests supporting use of the challenged procedures. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976). " 'No particular procedure violates [due process] merely because another method may seem fairer or wiser.' " *Bowers,* 638 N.W.2d at 691 (quoting 16B Am. Jur.2d *Constitutional Law* § 909, at 500 (1998)).

With respect to the first and third factors, we have already identified the interests at stake. A parent has an interest in the custody of his or her child. The State has an interest in finalizing the termination procedure in an expedient manner so as to meet the child's emotional and psychological need for a permanent home, as well as to control the financial drain on the State caused by needlessly protracted proceedings. Interestingly, the parent in a termination case also has an interest in a speedy conclusion because of the potential of regaining custody.

The remaining factor is the risk of error created by the abbreviated procedure. A similar risk was considered by our court of appeals in *In re R.K.,* 649 N.W.2d 18 (Iowa Ct.App.2002). In that case, a parent claimed a due process violation because "the reduced time from when she received the transcript of the trial court proceedings to the time the petition was due prevented her counsel from thoroughly reviewing the transcript, fully researching the issues, and adequately drafting the petition for appeal." *In re R.K.,* 649 N.W.2d at 20. The court noted the parent's trial counsel, who was present at and participated in the termination hearing, had a full opportunity to raise issues for appeal in the petition on appeal, and the appellate court had the "ability to review the full record and transcript of the underlying proceeding." *Id.* at 21. The combination of these procedures, concluded the court, protected "both the parents and child against the risk of erroneous deprivation." *Id.*

We think the same is true here, where the mother's complaint is not focused so much on the reduced timetable on appeal as it is on the diminished opportunity for full briefing. Even though full briefing was not allowed in the appeal before us, the procedures that were available substantially minimized any risk of error. Counsel had the opportunity to identify the issues for review by the appellate court with supporting legal authority and the reviewing court had the entire record and trial transcript before it when conducting its de novo review. Balancing the relative interests and risks involved, we conclude that this procedure did not violate the due process rights of C.M.'s mother. *Cf. United States v. Marines,* 535 F.2d 552, 556 (10th Cir.1976) (holding summary calendar does not violate due process as long as defendant is able to properly present issues on appeal).

VI. *Conclusion and Disposition.*

We hold the expedited appellate procedure in termination-of-parental-rights cases that permits only a petition on review rather than full briefing does not violate constitutional requirements of procedural due process or equal protection. Therefore, the appellant's counsel did not

render ineffective assistance by failing to raise these constitutional issues in the petition on appeal. Accordingly, the appellant's claim of ineffective assistance of counsel fails. We affirm the decision of the court of appeals and the judgment of the juvenile court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**