**IN THE COURT OF APPEALS OF IOWA**

No. 17-0078
Filed April 19, 2017

**IN THE INTEREST OF B.T. and B.T.,**
**Minor Children,**

**C.T., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A father appeals the juvenile court order terminating his parental rights to his two daughters. **AFFIRMED.**

Thomas P. Graves of Graves Law Firm, P.C., Clive, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Paul L. White of Juvenile Public Defender, Des Moines, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

A father appeals a juvenile court order terminating his parental rights to his two daughters, now ages six and eight. He contends the juvenile court should have opted not to terminate his rights because the girls were placed with relatives. He also raises a due-process issue. Finding no merit in either claim, we affirm the court's termination of the father's parental rights.[1]

Cory and Jennifer had two daughters, born in 2008 and 2011. The girls, B.T. and B.T., were removed from their parents' care and adjudicated as children in need of assistance (CINA) in July 2015 after they witnessed Cory assaulting Jennifer. The family had been involved with services offered through the Iowa Department of Human Services (DHS) since 2014, following a previous incident of domestic violence. Cory acknowledges a history of substance abuse and criminal behavior.

B.T. and B.T. lived with their paternal great-grandparents during the fourteen-month duration of the CINA case. According to the DHS social workers, neither Cory nor Jennifer made significant progress toward reunification during that time. In March 2016, their maternal grandparents—who lived in Illinois— successfully moved to intervene in the case. In June 2016, the State filed a petition seeking to terminate the parental rights of both Cory and Jennifer. In August 2016, child-welfare officials in Illinois completed a favorable home study

---

[1] We review termination-of-parental-rights proceedings de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We are not bound by the factual findings of the juvenile court, but we give them weight. *See id.* We also review constitutional claims de novo. *In re C.M.*, 652 N.W.2d 204, 209 (Iowa 2002).

for the girls' maternal grandparents under the Interstate Compact on Placement of Children (ICPC).

The juvenile court scheduled a hearing for September 6, 2016. On that day, Cory was incarcerated at the Polk County jail on charges of operating while intoxicated, driving under suspension, and probation revocation. Due to a scheduling error, he was not transported in time for the beginning of the hearing, which started at 8:42 a.m.[2] Cory's attorney asked to delay the hearing until his client arrived, but the court declined. Before Cory's arrival, the court took testimony from the maternal grandparents concerning their request for placement. After Cory arrived at 9:45 a.m., he testified to not being able to resume custody of his daughters for at least ten months because of his criminal sanctions. Cory told the court he wanted B.T. and B.T. to stay with their paternal great-grandparents but acknowledged their maternal grandparents had been supportive of the family, even if from a distance. The guardian ad litem spoke in favor of termination of parental rights. The hearing ended at 10:54 a.m.

On September 7, 2016, the court issued an order continuing placement with the paternal great-grandparents until September 30 and then modifying placement to the home of the maternal grandparents starting October 1. The next day, Cory's attorney filed motions challenging the placement order. On September 29, the juvenile court denied Cory's motions, explaining it had granted the paternal great-grandparents' request to intervene and the two sets of grandparents had reached "an agreement between themselves" to maintain "familial connections" for B.T. and B.T. The court believed "any and all issues

---

[2] Jennifer did not attend the hearing, and her attorney did not know her whereabouts.

associated with fairness and representation are rectified." Cory's attorney tried to appeal the placement order, but the supreme court deemed the ruling interlocutory and denied review in November 2016.

In December 2016, the juvenile court issued its order terminating parental rights, basing its termination of Cory's parental rights on Iowa Code section 232.116(1)(f) (2016).[3] On appeal, Cory does not challenge the statutory basis for termination. In the absence of a challenge, the ground for termination remains in place. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

In his petition on appeal, Cory argues that because his daughters were originally in the care of their paternal great-grandparents and later placed with their maternal grandparents, Iowa Code section 232.116(3)(a) provided the court the option of not terminating parental rights. Section 232.116(3)(a) states the "court need not terminate the relationship between the parent and child if the court finds . . . [a] relative has legal custody of the child." But the girls were not in the "legal custody" of their relatives when placed there by the DHS. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). And even if they had been in the legal custody of relatives, the discretion to forego termination on that ground lies with the juvenile court. *Id.* Here, the juvenile court appropriately exercised its discretion in deciding that moving forward with termination of the parents' rights and adoption by the maternal grandparents was in the best interests of these children. The record showed the girls suffered emotional and behavior issues, aggravated by Cory's inconsistency and broken promises. In the words of their

---

[3] The court also terminated Jennifer's parental rights, but she is not a party to this appeal.

grandfather, "the girls get very frustrated with his in-and-out visitation and participation in their lives, so we think that's really hurting them."

Cory next argues he was denied due process because he was not present for the entire September 6th hearing. He also suggests his due-process rights were impacted "when the hearing turned into a hearing on the placement of the children with the maternal grandparents."

Cory is correct that "[d]ue process requires 'fundamental fairness' in judicial proceedings," including termination-of-parental-rights hearings. *See In re J.S.*, 470 N.W.2d 48, 52 (Iowa Ct. App. 1991) (holding parent received due process where juvenile court overruled his motion to be transported from prison for the termination hearing because he received notice of the hearing, was represented by counsel at the hearing, and had the opportunity to present testimony by deposition). In this case, we see no denial of fundamental fairness. Cory received notice of the hearing, was represented by counsel at the hearing, and arrived in time to testify to his efforts at achieving sobriety and his desire for more time to reunite with his daughters. Cory also had the opportunity to tell the court why he wanted the girls to stay with their paternal great-grandparents: "All the family is here in town. I think they're good support. There's plenty of people around to help. They've already been going to their schools. They have friends there. I mean, this is their home." To the extent Cory is complaining about the post-termination placement of B.T. and B.T. with their maternal grandparents, he is not entitled to relief because he is not an aggrieved party. *See In re K.A.*, 516 N.W.2d 35, 38 (Iowa Ct. App. 1994).

**AFFIRMED.**