# IN THE COURT OF APPEALS OF IOWA

No. 17-1720
Filed January 10, 2018

**IN THE INTEREST OF S.F. and T.F.,**
**Minor Children,**

**N.F., Father,**
　　　Appellant.

_____

Appeal from the Iowa District Court for Polk County, Louise M. Jacobs, District Associate Judge.

A father appeals the juvenile court order removing his children following adjudication. **AFFIRMED.**

Jessica Maffitt of Benzoni Law Office, P.L.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Paul L. White of Juvenile Public Defender Office, Des Moines, guardian ad litem for minor children.

Considered by Vogel, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

The juvenile court decided six-year-old S.F. and three-year-old T.F. could not remain in the family home because their parents were failing to meet their nutritional, emotional, and medical needs and were not providing a safe and stable environment. Their father, Nicholas, appeals the removal on three grounds. First, he claims the juvenile court violated his right to due process by refusing to postpone the removal hearing so he could investigate claims made in a recently disclosed letter from S.F.'s pediatrician. Second, he claims removal was not the least restrictive disposition. Third, he asserts removal was not in the children's best interests. After reviewing the record,[1] we conclude Nicholas did not preserve error on his constitutional claim. On the substance of the removal, we reach the same conclusion as the juvenile court—placing the children outside the home is necessary to protect them from harm and serves their best interests.

## I.      Facts and Prior Proceedings

S.F.'s medical needs lie at the heart of this case. She suffers from Trisomy 13, a chromosomal disorder associated with severe intellectual and physical disabilities; she requires both a feeding tube and a breathing tube. In February 2016, the court found the parents, Nicholas and Jazmine, were neglecting her medical care. The court also found the parents were not tending to the hygiene and feeding of T.F., her younger brother. The court adjudicated both S.F. and T.F. as children in need of assistance (CINA). T.F. remained with his parents, but upon

---

[1] We review child-welfare proceedings de novo. *In re K.B.*, 753 N.W.2d 14, 15 (Iowa 2008). We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is critical to the outcome. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).

the recommendation of the Iowa Department of Human Services (DHS), the court removed S.F. from the family home for eleven months.

By February 2017, the parents had made sufficient progress to address S.F.'s special needs at home—with the help of a visiting nurse service. But within a few months of her return to the home, the DHS had renewed concerns about the children's care. The case worker informed the court the parents were not properly feeding S.F. and were not attending her many appointments, including physical, occupational, and speech therapy. According to the DHS, the parents also were struggling with supervising both S.F. and T.F., as well as a new infant sibling.[2] In the fall, Jazmine moved out, leaving all three children with Nicholas. On August 21, 2017, the court scheduled a removal hearing for October 16.

Shortly before the removal hearing, the DHS received a letter from S.F.'s pediatrician outlining concerns about S.F.'s care at home. The letter alleged the girl's nurse was taking her to medical appointments instead of Nicholas and Nicholas was not changing S.F.'s diaper for up to twelve hours. The letter also repeated the nursing agency's concern that Nicholas was not properly feeding S.F. The letter also raised safety concerns, stating when the nurse arrived in the mornings Nicholas was not awake but the door was unlocked.

The juvenile court ordered S.F. and T.F removed from the home and set a review hearing for February 2018. Nicholas then brought this appeal.

---

[2] The third child is not a subject of this appeal.

## II.     Analysis of Father's Claims

### a.  Due Process

Nicholas argues the juvenile court violated his right to due process by not granting him additional time to investigate the allegations in the doctor's letter. Parents are guaranteed due process in CINA proceedings. *See In re A.M.H.*, 516 N.W.2d 867, 870 (Iowa 1994). Generally, the fundamental requirements of due process are notice and an opportunity to be heard. *Id.* (citing *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)).

At the removal hearing on Monday morning, counsel for Nicholas told the court they only had the doctor's letter since Friday afternoon and "[t]hat's not sufficient time to address some of the issues." The court acknowledged it "would have been better for the information from the doctor to be obtained earlier," but it concluded the late notice of the doctor's concerns did not stop either parent from preparing for the removal hearing, given they had nearly two months' notice.

 Nicholas did not allege a due process violation in the court's denial of extra time. By failing to make such an argument, Nicholas failed to preserve this issue for appeal. *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) (concluding issues, including constitutional issues, in CINA cases must be presented and ruled upon by the juvenile court to be preserved for appeal).

Alternatively, Nicholas argues he received ineffective assistance of counsel and we should consider his claim under that framework. We view claims of deficient representation in CINA proceedings in a similar manner to ineffective-assistance claims in criminal cases. *In re J.P.B.*, 419 N.W.2d 387, 390 (Iowa 1988). Nicholas must show (1) counsel's performance was deficient and (2) actual

prejudice resulted. *See In re C.M.*, 652 N.W.2d 204, 207 (Iowa 2002). If Nicholas is unable to prove either element, his claim fails. *See id.* On appeal, Nicholas does not specify how he was prejudiced by counsel's performance. Without such a showing, he cannot establish the requisite prejudice.

Even if we were to reach the merits of the due process claim, Nicholas would not be entitled to relief. He was present at the hearing and had a chance to argue against removal. *See In re A.M.H.*, 516 N.W.2d at 870 (noting due process requires an opportunity to be heard). While counsel asserted a need for more time to respond to some issues in the letter, Nicholas failed to counter even the most basic allegations. For example, he could have testified regarding how often he changed S.F.'s diapers or fed her after the nursing staff left for the day, what time he generally wakes up; and whether he leaves his apartment unlocked. But he did not avail himself of the opportunity to testify. Thus, the record reveals no due process violation.

### b. Basis for Removal

Next, Nicholas argues removal was not the "lease restrictive disposition." To remove children from their home, the juvenile court must find by clear and convincing evidence the children "cannot be protected from some harm which would justify the adjudication of the child as a [CINA] and an adequate placement is available." *See* Iowa Code § 232.102(6)(a) (2017). The juvenile court must also determine keeping the children in the "home would be contrary to the welfare of the child[ren], and shall identify the reasonable efforts that have been made." *Id.* at § 232.102(6)(b).

Clear and convincing evidence supports the children's removal from home. S.F.'s medical conditions require skilled and dedicated care. Nicholas fell short of that requirement. The DHS offered credible evidence he did not provide adequate nutrition or diaper changes for the special-needs child. The State also offered clear and convincing evidence that removal was necessary for T.F. Nicholas did not follow the DHS recommendations concerning T.F.'s counseling needs. In addition, the record indicated Nicholas was not giving T.F. adequate nutrition. The daycare staff often saved a lunch for the boy when he was dropped off late in the day by Nicholas.

The DHS also believed Nicholas was inappropriately relying on the nursing staff to provide routine supervision for the children. S.F.'s nurse arrived at the home before Nicholas woke up and assumed care at the time. Relatedly, the DHS expressed a safety concern about the apartment door remaining unlocked. Like the juvenile court, we conclude leaving the children in the home would be contrary to their welfare.

### c. Best Interests

Nicholas argues removal is not in the children's best interests because they have a strong bond with him. He contends their removal from home was even more traumatic given their mother's recent departure. No doubt the removal further disrupted the children's routines, but the risk posed by the continued inadequate care at home outweighs any emotional upheaval.

Nicholas also argues removal is not in the children's best interests because they are in separate placements. Siblings should be kept together whenever possible. *In re A.M.S.*, 419 N.W.2d 723, 734 (Iowa 1988). But when one child

requires more intensive care than another, separation may be justified and may not weigh against removal. *See id.* S.F. has unique medical needs; T.F. does not. Although the children are placed separately, removal is still in their best interests.

**AFFIRMED.**