# IN THE COURT OF APPEALS OF IOWA

No. 17-1893
Filed February 7, 2018

**IN THE INTEREST OF M.D., M.D., and D.D.,**
**Minor Children,**

**E.D., Mother,**
    Appellant,

**D.D., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton Ploof, District Associate Judge.

The mother and father separately appeal the termination of their parental rights to their children. **AFFIRMED ON BOTH APPEALS.**

Jennifer M. Olsen of Olsen Law Office, Davenport, for appellant mother.

Randall L. McNaughton of Randall McNaughton Attorney at Law, Davenport, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Matthew D. Hatch of Hatch Law Firm, P.C., Bettendorf, guardian ad litem for minor children.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

The mother and father separately appeal the termination of their parental rights to their three children, M.D. born in 2005; M.D., born in 2009; and D.D., born in 2011. The juvenile court terminated each parent's rights as to all three children pursuant to Iowa Code section 232.116(1)(d) and (f) (2017). On appeal, both parents maintain their parental rights should not have been terminated because (1) there is not clear and convincing evidence to support the statutory grounds for termination, (2) it is not in the best interests of the children, and (3) a permissive factor weighs against termination. Additionally, the father claims the oldest child should have been appointed an attorney separate from the guardian ad litem (GAL). *See* Iowa Code § 232.89(4).

We begin our review[1] by considering the statutory grounds for termination. Where, as here, the juvenile court terminates parental rights on more than one ground, we may affirm on any ground we find supported. *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). Under subsection (f), each parent challenges only the final element—whether the children could be returned home at the time of the termination hearing. *See* Iowa Code § 232.116(f)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "present time" language of section 232.116 to mean "at the time of the termination hearing").

It is undisputed that both of the parents made some improvements between the time the children were removed and the hearing. The home was unsanitary at

---

[1] We review termination proceedings de novo. *In re M.W.*, 876 N.W2d 212, 219 (Iowa 2016). We will affirm the juvenile court's order if the grounds for termination are proven by clear and convincing evidence. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Our primary concern is the best interests of the children. *Id.*

the time the Iowa Department of Human Services (DHS) got involved—February 2016. There were dirty clothes strewn throughout the home and strong odor of cat and dog urine, along with the smell of having six pets in a small space. The middle child's teacher reported she often arrived at school with "filthy" arms and face, wearing soiled, too-small clothing—sometimes pajamas. While the parents had regressed in some ways in the months preceding the hearing—which took place in September 2017—for most of the pendency of the case, the home was considered sanitary by the department.

Additionally, DHS initially got involved due to an allegation of physical abuse by the father against the oldest child. The father kicked the child while wearing boots, leaving a bruise larger than a silver dollar on the child's inner knee. The father had since completed an anger-management course and a batterer's education program, and the service provider testified she no longer had any concerns about the father expressing his anger through physical abuse. The parents continued to attend couple's counseling, and everyone acknowledged their relationship had improved.

However, there were still a number of serious, legitimate concerns surrounding both parents. After the children were removed, the oldest two children reported they had been sexually abused in the home. Based on the oldest child's report, DHS learned the parents had allowed a registered sex offender to live in the home. When asked, the parents admitted they had "heard rumors" about the man before they allowed him to live in the home and spend time with the children. Later, the middle child named a second man who had been allowed to live in the

home and who had also sexually abused her and her older sister.[2]  Yet the parents failed to take responsibility for allowing the men into their home and their failure to protect their daughters.  Until shortly before the termination hearing, they denied the incidents could have occurred, instead referring to the oldest child as a "chronic liar" and blaming her for raising the issue.  The parents failed to grasp that these incidents—and their response to them—had created trust issues between them and the children.  All of the children, but the middle child especially, continued to have extreme behavioral issues at the time of the termination hearing.  Although the parents had "checked all the boxes" as to what they were asked to complete during the pendency of the case, they were still unable or unwilling to grasp their role in working toward resolving their children's behavioral issues; it was noted the parents expected professionals to "fix" the children for them.  Additionally, while the parents were able to verbalize what they needed to do to keep their children safe, in the months preceding the termination hearing, it was discovered the parents had again allowed someone else to move in to the family home.  The parents continued to deny it was true, but a service provider had stopped by for two unannounced visits in two months and had witnessed the same woman sleeping in the same bedroom both times.  When questioned as to how they knew the woman or what they had done to check her out, the mother testified they had met the woman at the dog park a few months ago.

We acknowledge that the parents had made strides in some areas during the pendency of this case, but the children would still have been at risk of suffering

---

[2] The middle child had also recently indicated that the father had sexually abused her and the oldest sister.  The father denied the allegations.

an adjudicatory harm if returned to their parents' care at the time of the termination hearing. Thus, there is clear and convincing evidence to support termination under section 232.116(1)(f).

Next, we consider whether termination of the mother's and father's rights was in the children's best interests. *See* Iowa Code § 232.116(2). In considering the children's best interests, we focus on "the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *Id.* The parents maintain termination was not in the children's best interests because, at the time of the termination hearing, the children were each in a separate placement. We acknowledge the importance of sibling relationships has been statutorily recognized in section 232.108. *See also In re A.J.*, No. 13-0216, 2013 WL 1227360, at *3 (Iowa Ct. App. Mar. 27, 2013). But we disagree with the parents' assertion that their rights must remain intact in order to support the sibling relationship. Iowa Code section 232.108(6) contemplates the role of the department and child-placement agency in facilitating visits between siblings even after the children are adopted. And here, the social worker testified the goal of the department was to place all three children together, once the middle child was ready to leave the psychiatric medical institution for children where she currently resided. Even if the siblings are not ultimately able to be adopted by a single family, returning these three children with special needs to their parents is not in their best interests, as the parents are not currently able to provide them with a safe, supportive, and structured home, and we must consider each child's need with a sense of urgency. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000).

The father notes there is a permissive factor in section 232.116(3) that allows the court to avoid termination of the parents' rights if a child over the age of ten objects to the termination. *See* Iowa Code § 232.116(3)(b). He claims the oldest child—who was over ten years old at the time of the termination hearing— should have been appointed an attorney separate from the GAL in order to ensure she was informed of the proceedings and her wishes were known. *See id.* § 232.89(4). It does not appear the father raised the issue of bifurcating the role of the GAL with appointment of an attorney with the juvenile court, and we will not consider the issue for the first time on appeal. *See In re C.M.*, 652 N.W.2d 204, 207 (Iowa 2002) (noting even in termination cases, "[c]onstitutional questions must be preserved by raising them 'at the earliest opportunity after the grounds for objection become apparent.'" (citation omitted)). Both parents maintain their strong bond with their children outweighs the termination of their parental rights. *See* Iowa Code § 232.116(3)(c). After reviewing the record, we cannot say the children's bond with their parents is so strong as to countervail the benefits termination of the parents' parental rights will ultimately bring to the children.

We affirm the termination of both parents' rights as to each child.

**AFFIRMED ON BOTH APPEALS.**