# IN THE COURT OF APPEALS OF IOWA

No. 19-0032
Filed March 20, 2019

**IN THE INTEREST OF L.D.,**
**Minor Child,**

**A.D., Mother,**
        Appellant,

**J.D., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Hancock County, Karen Kaufman

Salic, District Associate Judge.

A mother and a father separately appeal the termination of their parental

rights to their child.  **AFFIRMED ON BOTH APPEALS.**

Michael J. Moeller of Sorensen & Moeller Law Office, Clear Lake, for

appellant mother.

Theodore J. Hovda, Garner, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

Carrie J. Rodriguez of Garland & Rodriguez, Garner, attorney and guardian

ad litem for minor child.

Considered by Potterfield, P.J., Bower, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DANILSON, Senior Judge.**

The mother and father separately appeal the termination of their parental rights under Iowa Code section 232.116(1)(e) (2018). The mother contends the statutory grounds have not been shown, termination of parental rights is not in the child's best interests, and her close bond with the child should preclude termination. The father argues termination of his parental rights is not in the child's best interests. He, too, contends the closeness of the parent-child relationship should preclude termination.

**I. Background Facts and Proceedings.**

The family came to the attention of the department of human services (DHS) in late 2017 after the execution of a search warrant at the family home, where numerous controlled substances and paraphernalia were found. The child was adjudicated a child in need of assistance (CINA) due to her parents' drug use and the impact it had on her care. In the December 8, 2017 CINA adjudication order, the juvenile court ordered:

> In order to demonstrate progress toward case closure, parents shall be consistent with discipline, expectations and structure for the benefit of the child, provide for the child's financial needs through employment income, maintain a safe and appropriate home and actively engage in the child's life, including maintaining contact with and being responsive to the concerns of the child's teachers, daycare personnel, medical providers and other persons who have on-going contact with the child.

Initially, the parents were cooperative and active in substance-abuse and mental-health treatment. They were attending couples counseling. At the dispositional hearing, their progress was noted and the child was allowed to stay with the parents in the home.

Unfortunately, after the dispositional hearing, the relationship conflicts between the parents escalated, as did their drug use. The mother was trying to work with law enforcement as an informant, and she simply could not manage that and her other obligations. The father assaulted the mother in front of L.D. and her sister—the mother relying on L.D.'s seven-year-old sister to call 911. A no-contact order was issued but the two parents violated it numerous times, and the father assaulted the mother again. Both parents admitted to relapsing in their methamphetamine use. Consequently, on May 3, 2018, the children were removed from the parents' custody. L.D. was placed with a maternal uncle and his wife. Her sister was placed with her biological father.

In an August 17, 2018 review order, the juvenile court observed:

> [L.D.] remains with her aunt and uncle and is doing well. Her speech has improved significantly. Unfortunately, they have identified that they are not a long-term placement option for [L.D.] because of the complications presented by on-going family contact with [the] mother. . . . [The] mother meets with [Family Safety, Risk, and Permanency] FSRP fairly regularly, but continues to struggle with her sobriety. She is not willing to return to inpatient after her earlier failed attempt. She is not working, relies on her father for financial support and her criminal charges have not been resolved.
> The problems for which the court became involved have not resolved. The level of compliance by family members is indicative of the family's progress.

On October 10, 2018, the child's guardian ad litem (GAL) submitted a report to the court noting that the mother had missed a visit because she was serving jail time for violation of the no-contact order; however, the FSRP worker later found out that the mother did not report to serve her jail time nor did she request additional time with the child.

The juvenile court issued a permanency order on October 12, finding the father and mother continued to have contact despite the no-contact order. The court found:

> [The] mother has been fairly consistent with visits, but in September failed to report to jail on three separate occasions (she had two sentences to serve for violating the no contact order). She was arrested on four new counts on October 10. She has also been unsuccessfully discharged from substance abuse treatment, in part due to poor attendance, but also due to repeated disruptions and her insistence that she will not work with a particular counselor. She has announced that substance abuse is not her actual problem and has been unwilling to commit to a treatment plan. She vocalizes an intention to be involved in Family Preservation Court[1] and treatment, but has not made any genuine effort to start that.

The court ordered the filing of a petition to terminate parental rights.

A termination-of-parental-rights petition was filed on October 19, and trial was held on December 21, 2018. In its order terminating parental rights, the juvenile court observed:

> [The mother] was encouraged to participate in Family Preservation Court, but elected to re-enter Prairie Ridge inpatient on November 3, successfully discharging this time on November 30. She left very motivated to maintain sobriety and agreed to try Family Treatment Court. Unfortunately, she did not follow through with that, citing a long list of excuses about how she doesn't need it. She is listed as a current participant, but she missed two of the last three weeks of the program and when she appeared on Wednesday was believed to be under the influence of methamphetamine. She also has missed drug testing twice and treatment appointments over the last two weeks. She does continue to meet regularly with her FSRP provider and the Department. She is still not working and her housing arrangement depends solely on staying in her father's good graces.

The court then noted:

> As an additional complication, [the] mother is pregnant [by the father]. She is completely reliant on others financially. Even after [fourteen] months of involvement with the Department, they are not

---

[1] Also referred to as Family Treatment Court.

regularly participating in services or maintaining progress. There was absolutely no effort by parents to meaningfully engage in services until the termination petition was filed. . . .

. . . .

[The] mother has had consistent contact with [L.D.] and [L.D.] clearly enjoys seeing her mother. However, that contact still remains supervised after all of this time. Further, while those visits go well, outside of those two or so hours a week, [the] mother has not assumed the affirmative assumption of the duties encompassed by the role of being a parent. She has not provided financially for the child, nor made a genuine effort to complete the responsibilities prescribed in the case permanency plan to allow reunification to occur. She very recently completed treatment, but is dragging her feet to fully address her substance abuse and mental health issues.

The trial court concluded, "There exists clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.

Both parents appeal.

**II. Scope and Standard of Review.**

We review termination of parental rights proceedings de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). We give weight to the court's findings, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g).

**III. Discussion.**

*A. Grounds for termination exist.* To terminate parental rights under section 232.116(1)(e), the State must show:

> (1) The child has been adjudicated [CINA] pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained *significant and meaningful contact* with the child during the previous six consecutive months and have made *no*

> *reasonable efforts* to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

(Emphasis added.)

For his part, the father does not challenge that grounds for termination exist. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) ("Because the father does not dispute the existence of the grounds [for termination], we do not have to discuss this step.").

The mother acknowledges the child was adjudicated a CINA and has been removed from physical custody for at least six consecutive months. Consequently, the first two elements of section 232.116(1)(e) have been satisfied. The mother's argument is that the final subparagraph has not been satisfied.

Subparagraph three has two requirements: "the parents (1) have not maintained *significant and meaningful contact* with the child during the previous six consecutive months and (2) have made *no reasonable efforts* to resume care of the child despite being given the opportunity to do so." *In re T.S.*, 868 N.W.2d 425, 437 (Iowa Ct. App. 2015). "The two requirements of subparagraph (e)(3) are clearly in the conjunctive: connected, joined together. Each is separately required, but they are considered closely interconnected." *Id.*

Upon our de novo review, we agree with the juvenile court that the grounds for termination exist here. *See id.* (noting the mother engaged in some services and participated in visitation but "has not made a genuine effort to complete her

responsibilities as prescribed in the permanency plan"). We acknowledge the mother has engaged in visits with L.D. and that she enrolled with the Family Treatment Court on the date of the termination trial. But, as was the case in *T.S.*, in performing our "qualitative analysis" of the mother's efforts, the mother has done little in the way of making *reasonable* efforts to resume care of the child. *See id.* at 438. There is clear and convincing evidence to support termination of her parental rights pursuant to section 232.116(1)(e).

*B. Termination is in the child's best interests.* We must next consider whether termination is in the child's best interests. *D.W.*, 791 N.W.2d at 706–07 ("If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights."). In making the best-interests determination, our primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We also keep in mind that once the statutory time period has passed, we must consider the child's already shortened opportunity to find permanence and stability. *See In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) ("It is unnecessary to take from the children's future any more than is demanded by statute. Stated otherwise, plans which extend the . . . period during which parents attempt to become adequate in parenting skills should be viewed with a sense of urgency."); *see also In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting that once the time period for reunification set by the legislature has expired, "patience on behalf of the parent can quickly translate into intolerable hardship for the children").

Both parents point out the importance of the parent-child relationship. The mother asserts the court "must defer to the biological parent." We presume she means we must acknowledge a parent's fundamental interest in a relationship with their child. *See In re C.M.*, 652 N.W.2d 204, 210 (Iowa 2002) (noting a parent's fundamental right to the care, custody, and control of their child). Nonetheless, the State has the duty "to assure that every child within its borders receives proper care and treatment, and must intercede when parents fail to provide it." *A.C.*, 415 N.W.2d at 613.

> This duty includes an obligation to establish child custody quickly so that children do not "suffer indefinitely in parentless limbo." The best interest of the children who are the subject of the termination proceeding is the State's primary concern, and this court has recognized that delays in the resolution of termination cases is "decidedly antagonistic to the children's best interest."

*C.M.*, 652 N.W.2d at 211.

The mother also argues that we are to maintain sibling relationships when possible. *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994) (noting that siblings are to be kept together where possible). The mother notes she "is still working on reunification efforts with that sibling." The siblings are not in the same home and have not been in the same home for many months—much of this two-year-old child's life. The opportunity to find a safe and permanent home without the turmoil and uncertainty of the parents' unresolved substance-abuse and domestic-abuse problems takes precedence and is in the child's best interest.

*C. Additional time not warranted.* Both parents assert they should be granted additional time to seek reunification. The father notes "the progress he made in the month prior to termination warrants a chance to show he could provide

a home for L.D." The mother, too, notes the progress made just prior to termination.

Iowa Code section 232.104(2)(b) permits a court to enter an order deferring permanency for six months so long as the need for removal would no longer exist at the end of the six-month period. In granting an extension of time, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal . . . will no longer exist at the end of the [extension]." Iowa Code § 232.104(2)(b).

Both parents' recent successful discharges from drug treatment is a good start. However, the fact that they waited until after the termination petition was filed suggests they have not placed their child's interests ahead of their own. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). We also recognize that a good prediction of the future conduct of a parent is to look at the past conduct. *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). The parents' past conduct does not bode well for their ability to parent L.D. safely. *See id.* ("Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting."). We find there was clear and convincing evidence an additional period of rehabilitation would not correct the situation here.

*D. No exceptions to termination should be applied.* Both parents argue one of the exceptions to the termination statute should be applied to avoid termination

of their parental rights. Under Iowa Code section 232.116(3)(c), the court need not terminate parental rights if the court finds "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." "'The factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citation omitted).

The father admits he failed to maintain significant and meaningful contact with the child during the previous six consecutive months. He has visited her infrequently since her removal in May 2018. Even if we acknowledge a close bond may once have existed, the father has failed to establish the bond should preclude termination here.

The mother's bond with the child was noted by the service providers. Yet, for eight months the mother has not progressed beyond more than limited, supervised visits with the child. The mother is attempting to maintain sobriety outside a custodial setting and is expecting another child. The mother was so overwhelmed by anxiety during one visit with L.D. and her sibling that the mother asked the service provider to let her out of the car on a road. We decline to avoid termination of parental rights here.

**AFFIRMED ON BOTH APPEALS.**