# IN THE COURT OF APPEALS OF IOWA

No. 20-1387
Filed March 17, 2021

**IN THE INTEREST OF K.P.,**
**Minor Child,**

**K.P., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.


A mother appeals the termination of her parental rights.  **AFFIRMED.**


Mark A. Milder, Denver, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Cynthia Schuknecht of Noah, Smith, Schuknecht & Sloter, P.L.C., Charles City, attorney and guardian ad litem for minor child.


Considered by May, P.J., and Greer and Schumacher, JJ.

**MAY, Presiding Judge.**

A mother appeals the termination of her parental rights to her child, K.P., who was born in 2017. The mother claims (1) termination is not in K.P.'s best interest, (2) the juvenile court should have exercised exceptions to termination under Iowa Code section 232.116(3)(a) and (c) (2020), (3) the court should have granted the mother additional time to work toward reunification, and (4) she was denied due process because she was unable to attend the termination hearing in person. We affirm.

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted). Review of the mother's constitutional claim is also de novo. *See In re C.M.*, 652 N.W.2d 204, 209 (Iowa 2002).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine: (1) whether grounds for termination have been established, (2) whether termination is in the child's best interest, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. We also address any additional claims raised by the mother. *In re K.M.*, No. 19-1637, 2020 WL 110408, at *1 (Iowa Ct. App. Jan. 9, 2020).

Here, the court found grounds authorizing termination pursuant to Iowa Code section 232.116(1)(h). On appeal, the mother does not challenge the statutory grounds for termination. So we need not address this step in our analysis. *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

We move on to the second step in our analysis, which requires us to determine whether termination is in K.P.'s best interest. We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

When considering whether termination is in K.P.'s best interest, we look to the mother's past performance as an indicator of the care she is likely to provide in the future. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And the mother's past performance raises substantial concerns about the future K.P. would have with her. She has struggled with cocaine use and admitting she has a substance-abuse problem. Since the Iowa Department of Human Services (DHS) became involved with the mother in August 2018, substance abuse has remained a concern.

K.P. has come to this court's attention three times before. *See generally In re K.P.*, No. 20-0402, 2020 WL 3571890 (Iowa Ct. App. July 1, 2020) (addressing the father's challenge to removal); *In re K.P.*, No. 20-0220, 2020 WL 1881122

(Iowa Ct. App. Apr. 15, 2020) (addressing the mother's challenge to removal); *In re K.P.*, No. 19-0470, 2019 WL 2524137 (Iowa Ct. App. June 19, 2019) (addressing both parents' challenge to removal). We note our finding in April 2020 that

> the mother ignores the fact that she has been found to have taken efforts to sabotage drug testing and has been believed to have been successful in such efforts due to the fact the mother has had negative drug tests during times when it would have been expected she would test positive given her admissions of use.

*K.P.*, 2020 WL 1881122, at *2 (affirming "the juvenile court's order confirming removal of [K.P.] from the mother's care and custody"). Similarly, in its October termination ruling, the juvenile court noted that "circumstances demonstrate an extraordinary ability of mother to circumvent drug testing over the course of the [child-in-need-of-assistance] proceeding." Even so, the mother tested positive for cocaine twice, in March and August 2020.

But drug abuse is not the only issue. The mother has also struggled with unresolved mental-health issues, violence and abuse in K.P.'s presence, proper supervision, and meeting essential needs. Like the juvenile court, we conclude termination is in K.P.'s best interest.

We move to our third step, whether we should apply a section 232.116(3) exception to preclude termination. The mother argues termination is not necessary because "the child is with a relative now and would be with a relative even if both parents' rights were terminated." From this, we infer she is attempting to invoke section 232.116(3)(a), which authorizes the juvenile court to forgo termination if "[a] relative has legal custody of the child." But section 232.116(3) exceptions are permissive, not mandatory. *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019).

And the burden of establishing an exception rests with the mother. *See A.S.*, 906 N.W.2d at 476.

The mother has not met this burden. She argues that, since K.P. is likely to return to the father's custody, "there is little to gain and much to lose" by terminating her rights. But this overlooks K.P.'s inherent need for permanency. Our Code recognizes certain timelines for these proceedings. *See, e.g.*, Iowa Code § 232.116(1)(h)(3). These timelines exist because we cannot hold children in limbo indefinitely. *See Z.P.*, 948 N.W.2d at 523. And forgoing termination would only subject K.P. to continued, unjustified limbo. This is not in her best interest. So we decline to apply section 232.116(3)(a).

The mother also argues termination is not necessary due to the strong parent-child bond she has with K.P. From this, we infer she is attempting to invoke section 232.116(3)(c), which authorizes the juvenile court to forgo termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." We decline to apply section 232.116(3)(c) here. K.P. has been out of the mother's care since January 2020. And she was previously removed from the mother's care for four months in 2019. K.P. is only three years old and has spent much of that time out of the mother's care. Additionally, the court appointed special advocate reported that the mother's "bond with [K.P.] is fragile and seems to suffer in the presence of the other siblings[1] as [K.P.] appears to prefer to spend her time with

---

[1] The mother has eight children. K.P. is her youngest.

them versus her mother." We see no clear and convincing evidence that the bond between K.P. and the mother outweighs K.P.'s pressing need for permanency.

Next, we address the mother's argument that she should be given an additional six months to work toward reunification. Under Iowa Code section 232.104(2)(b), the juvenile court *may* defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."

Here the mother complains that (1) the father was granted additional time for reunification and (2) her older children were not due for permanency until the end of 2020. But we cannot agree that an extension must be given to one parent just because another parent is allowed additional time to work toward reunification. *See A.R.*, 932 N.W.2d at 591. We also cannot agree that permanency timelines must change based on the status of older siblings' cases. The mother has not cited—and we have not found—any authority supporting her assertions.

Nor do we see any other reason for the juvenile court to have postponed termination. While the mother highlights her efforts toward reunification, DHS has been involved with the mother since August 2018. Even so, as the juvenile court noted in its October 2020 termination order, "the initial concerns of violence, substance abuse, parent-child conflict, parental conflict and failure to meet the needs of the children, largely remain." Given this history, we are unable to point to any specific and lasting change that will likely permit reunification within the next

six months. *See* Iowa Code § 232.104(2)(b). So we do not believe section 232.104(2)(b) required a grant of additional time.

Finally, we address the mother's claim that she "was denied a fair trial and due process under the Iowa and United States Constitution[s] after being denied the right to attend the hearing for termination of [her] parental rights in person." Here is what happened: The juvenile court began the termination hearing in person on August 24, 2020. However,

> [d]uring the lunch break a judicial branch employee who had been in the courtroom for the entire proceeding was notified of a positive coronavirus test of a person with whom there had been prolonged contact less than forty-eight hours earlier. After consultation with court administration, the rest of the hearing was cancelled for that day and rescheduled for September 24, 2020.

A few days later, the supreme court issued an order to address the coronavirus/COVID-19 impact on court services. *See* Iowa Supreme Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* (Sept. 1, 2020). The order stated:

> Through December 31, 2020, juvenile courts may order that any proceeding in cases filed under Iowa Code Chapters 232 and 600A may be conducted with the parties or participants appearing remotely by videoconference or telephone. This includes child-in-need-of-assistance adjudications, dispositional hearings, and *terminations of parental rights*. Any order directing a proceeding by videoconference or telephone *may be entered over the objection of a party*, but only after that party has an opportunity to be heard. If the juvenile court proposes a proceeding by videoconference or telephone, the presumption shall be in favor of going forth in that manner. Attorneys and self-represented litigants shall articulate in their objections the reasons constituting good cause for an in-person proceeding.
> Juvenile delinquency adjudication proceedings may be held by videoconference or telephone only by consent of the parties.

*Id.* (emphasis added).

In response to this guidance from our supreme court, the juvenile court ordered that the hearing would be conducted entirely by teleconference on September 24. But the juvenile court's order also permitted any aggrieved party to file an objection. In response, the mother filed a request for an in-person hearing. Following a hearing, the court overruled the mother's request. The court concluded: "Nothing that [the mother] raises in her objections overrides the presumption that it is appropriate to proceed with the hearing by teleconference. It is in [K.P.]'s best interest to decide this issue at the earliest possibility. There is no prejudice to [the mother] in proceeding with the hearing remotely."

The court then proceeded with the second day of the termination hearing. The mother and her lawyer participated by teleconference. The mother was able to testify, call witnesses, and submit exhibits.

We see no due process violation in this record. Although the court ultimately overruled the mother's objections to the use of remote technology, she was given the opportunity to be heard on the issue. Moreover, we have held that— when in-person attendance is not a viable option—remote termination hearings are consistent with due process so long as parents are allowed robust participation through telephone or other technology, and our supreme court has approved that holding. *See In re A.H.*, 950 N.W.2d 27, 33–40 (Iowa Ct. App. 2020); *see also In re A.B.*, ___ N.W.2d ___, ___, 2021 WL 935436, at *7 (Iowa 2021) ("In *In re A.H.*, . . . our court of appeals issued a thorough, published opinion upholding a decision . . . to hold a telephonic hearing . . . during the COVID-19 pandemic. We generally agree with the reasoning in that court of appeals decision."); *In re K.B.*, No. 20-1046, 2020 WL 7021579, at *3–4 (Iowa Ct. App. Nov. 30, 2020); *In re K.A.*, No. 20-

0979, 2020 WL 5946114, at *3–4 (Iowa Ct. App Oct. 7, 2020); *In re B.S.*, No. 20-0929, 2020 WL 5651693, at *1–2 (Iowa Ct. App. Sept. 23, 2020); *In re A.V.*, No. 20-0749, 2020 WL 4207407, at *1 (Iowa Ct. App. July 22, 2020). Here, the mother admits she was able to participate fully in the hearing. So we cannot conclude the mother was deprived of due process.

For the foregoing reasons, we affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**