**IN THE COURT OF APPEALS OF IOWA**

No. 19-1884
Filed February 5, 2020

**IN THE INTEREST OF M.B. and R.B.,**
**Minor Children,**

**S.B., Father,**
        Appellant.
_____


        Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld,

District Associate Judge.


        A father appeals the termination of his parental rights.  **AFFIRMED.**


        David R. Fiester, Cedar Rapids, for appellant father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Kimberly A. Opatz of Linn County Advocate, Inc., Cedar Rapids, attorney

and guardian ad litem for minor children.


        Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**AHLERS, Judge.**

Claiming that he had a constitutional right to refuse drug and mental-health testing, the father challenges the termination of his parental rights to the children.

At the time of the termination-of-parental-rights hearing, M.B. was four years old (born in November 2014) and R.B. was three years old (born in January 2016). The juvenile court terminated the parental rights of both the father and mother. The father appeals. The mother does not.

## I.    Background Facts and Proceedings

The Iowa Department of Human Services (the DHS) became involved with this family when the younger child tested positive for THC at birth.[1]  In addition to the positive drug test, the DHS also had concerns of domestic violence in the home.  These events led to a CINA adjudication in April 2016.  The children remained with the mother during the previous CINA cases, during which time the father did not participate in visits.  The previous CINA cases closed in March 2017 after entry of a bridge order[2] awarding sole custody of the children to the mother. In awarding sole custody to the mother in the bridge order, the juvenile court made the following findings:

> The [father] is not a suitable custodian for the children.  There are concerns that [the father] has ongoing substance abuse (marijuana) issues and unmet mental health (depression, non-compliance with medication management) needs.  [The father] has chosen not to involve himself with his children and has only had minimal contact with them in the past 8 months.  [The father] is not participating in the offered visitation with the children through the provider.  [The mother]

---

[1] The older child had also tested positive for THC at birth, but the DHS did not pursue a child-in-need-of-assistance (CINA) action at that time.

[2] *See* Iowa Code § 232.103A (2017) (permitting the juvenile court to close a CINA case by transferring jurisdiction over the child's custody, physical care, and visitation to the district court through a bridge order).

> has facilitated some limited visitation last Thanksgiving and Christmas. [The father] has refused to participate in the Child in Need of Assistance cases or even complete Social History information as ordered. The psychological and emotional needs, as well as the growth and development of the children, will best be addressed with the children in the sole legal and physical custody of the [mother]. The safety of the children would be jeopardized by the awarding of joint legal custody, or by unsupervised or unrestricted visitation with the children's father.

No appeal was taken of these findings or the bridge order.

From the time of M.B.'s birth in November 2014 until the start of the underlying CINA proceedings that led to the current termination proceedings, there were numerous founded child abuse assessments completed on this family. Investigations involving the family in February and March 2018 led to the discovery that the home in which the children were living was filthy, the children were being left outside unattended wearing only diapers and about to wander into the street before a passerby stopped them, and the mother was using methamphetamine around the children. The children were adjudicated to be children in need of assistance in April 2018. Orders for drug testing of the children were thwarted when the mother had the children's heads shaved to avoid the testing. The children were removed from parental care on May 7, 2018, after the mother, while under the influence of methamphetamine or other drugs, barricaded herself in front of the door to prevent law enforcement entry. Law enforcement eventually gained entry. Due to the children's condition, they were taken to the hospital for evaluation where it was discovered that the children had not been bathed for days to weeks, they were in heavily soiled diapers found to contain glass shards, they had significant tooth decay, they were behind on their immunizations, they had high lead levels, and R.B. had a staph infection in her nasal cavity. The father saw the

children at the hospital and noted their deplorable condition. This was the father's first contact with the children since 2016.

As part of the CINA process, the father was ordered to submit to drug testing and complete a mental-health evaluation. The father refused both, claiming the orders violated his constitutional rights. Due to the father's refusal to demonstrate being drug-free and to be evaluated for mental-health issues, he has not progressed beyond supervised visits. While the father has exercised a significant amount of the offered visitation, the guardian ad litem reported that the children have frequently expressed that they do not wish to attend visitation and they show signs of anxiety before and after visits, including sometimes having diarrhea and vomiting before or after visits. Also, the father knows the children have speech development delays, but the father has refused to sign paperwork needed to allow the children to participate in services such as speech therapy and receive other medical treatment.

After assessing the situation and the facts, the juvenile court terminated the parental rights of both parents. The father appeals, raising three largely intertwined issues.

## II. Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Our de novo review includes constitutional claims raised during the termination proceeding. *In re C.M.*, 652 N.W.2d 204, 209 (Iowa 2002). We give weight to the juvenile court's factual findings, but they do not bind us. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). The paramount concern is the children's best interests. *Id.*

### III.      Statutory Grounds for Termination

The father claims that the statutory grounds for termination were not met. The first way the father claims that the grounds were not met involves an error regarding the applicable paragraph of the Iowa Code referenced by the juvenile court in its ruling in M.B.'s case.  In the petitions filed to start the termination proceedings, the State sought termination of parental rights with respect to M.B. pursuant to Iowa Code section 232.116(1)(f) (2019) and with respect to R.B. pursuant to Iowa Code section 232.116(1)(h).[3]  The differences between sections 232.116(1)(f)[4] and 232.116(1)(h)[5] involve the ages of the children at issue and the

---

[3] The State also asserted grounds for termination with regard to both children pursuant to Iowa Code section 232.116(1)(a).  Section 232.116(1)(a) involves termination based on the consent of the parents.  Since neither parent consented to termination of their parental rights, the grounds under section 232.116(1)(a) were not established and those grounds are not an issue in this appeal.

[4] Under section 232.116(1)(f), the court may terminate parental rights if it finds all of the following:
>      (1) The child is four years of age or older.
>      (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>      (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
>      (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[5] Under section 232.116(1)(h), the court may terminate parental rights if it finds all of the following:
>      (1) The child is three years of age or younger.
>      (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>      (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

length of the period of removal. In pertinent part, section 232.116(1)(f) applies to children four years of age or older with a period of removal of twelve of the last eighteen months or the last twelve months, and section 232.116(1)(h) applies to children three years of age or younger with a period of removal of six of the last twelve months or the last six months. In terminating the father's parental rights, the juvenile court cited Iowa Code section 232.116(1)(h) for both children. As the father correctly points out, section 232.116(1)(h) could not serve as a basis for terminating the parental rights of M.B., as M.B. was four years old at the time of the hearing, so the age requirement of section 232.116(1)(h) could not be satisfied. While this is true, it does not lead to the result urged by the father. On appellate review of a termination of parental rights, we must "affirm an appeal where any proper basis appears for a trial court's ruling, even though it is not one upon which the court based its holding." *In re M.W.*, 876 N.W.2d 212, 221 (Iowa 2016) (quoting *State v. Maxwell*, 743 N.W.2d 185, 192 (Iowa 2008)). Although the juvenile court referenced terminating the father's parental rights with regard to M.B. pursuant to section 232.116(1)(h), this was fairly clearly a typographical error, with the correct section being section 232.116(1)(f). The typographical error has no legal significance in this case. In the petition filed to start M.B.'s case, section 232.116(1)(f) was the statutory ground alleged, and thus the only remaining ground upon which the juvenile court could base its termination decision. The erroneous reference to section 232.116(1)(h) as the ground for terminating parental rights of

---

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

M.B.'s parents may have caused us more pause if the juvenile court had neglected to make factual findings that satisfied the elements of section 232.116(1)(f), as then we may have had concern that the juvenile court applied the wrong subsection. In this case, however, the juvenile court made factual findings that demonstrate that the juvenile court was contemplating the correct section. Specifically, the juvenile court made findings that M.B. was almost five years old, had been adjudicated as a child in need of assistance, had been removed from parental care for seventeen consecutive months (from May 2018 until the termination hearing in September 2019), there had been no trial home placements with either parent, and neither parent was a viable placement option. Due to these findings that satisfy the elements of section 232.116(1)(f) with regard to M.B., we find the typographical error to have no legal significance in this case.

The father also asserts that the State failed to prove the fourth element of termination in sections 232.116(1)(f) and 232.116(1)(h), specifically that "there is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102." *See* Iowa Code § 232.116(1)(f)(4), (h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). In support of this argument, the father highlights the fact that he has not lived with the mother since approximately June 2016, which was prior to the filing of the current CINA petitions. In addition, the father argues that the State presented no evidence that his current home[6] was inappropriate for the

---

[6] The father lives with his own father (i.e., the children's paternal grandfather).

children. The father's focus on the condition of the home where he resides is misplaced in this instance. The problem with placing the children with the father was not the condition of the grandfather's home, but the deficiencies in the father's parenting. The father has a history of drug abuse and mental-health problems, plus the father was taking prescription narcotics for a serious back injury. In spite of these circumstances, the father refused to submit to drug testing to confirm his claimed sobriety and refused to submit to a mental-health evaluation. These refusals contributed to his inability to progress beyond supervised visits. At the termination hearing, he refused to answer questions about his marijuana use and mental-health history. He also failed to attend the children's medical appointments and caused delay in the children receiving needed services by refusing to sign necessary releases. Under these circumstances, it was appropriate to restrict the father to supervised interactions with his children, and it was appropriate for the juvenile court to terminate the parental rights of the father who had not progressed past supervised visitation in spite of over seventeen months of services being offered. We agree with the juvenile court that the statutory grounds for termination were properly established. *See* Iowa Code § 232.116(1)(f), (h). We also agree that the father was not entitled to an additional six months to work toward reunification. *See* Iowa Code § 232.104(2)(b) (allowing the juvenile court to provide an additional six months for reunification if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"); *see also In re D.S.*, 806 N.W.2d 458, 474 (Iowa Ct. App. 2011) ("We will not gamble with a child's future by asking him to continuously wait for a stable biological parent, particularly at such a tender age.").

## IV.     Best Interest of the Children

The father challenges the juvenile court finding that it was in the best interest of the children to terminate the father's parental rights.  In making this finding, the juvenile court relied on the recitation of facts that formed the basis for the finding that the children could not be safely returned to either parent.  *See* Iowa Code § 232.116(2) (requiring "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child").  We find no error in the juvenile court's conclusion that it was in the best interest of the children to terminate the father's parental rights.  Like the juvenile court, we refer to the factual findings that form the basis for the conclusion that the children cannot be safely returned to either of the parental homes as support for the determination that it is in the best interest of the children to terminate the father's parental rights.

In arguing that the juvenile court erred in finding that it was in the children's best interest to terminate the father's parental rights, the father largely blends the best-interest-of-the-child analysis with an argument that the statutory exceptions set forth in Iowa Code section 232.116(3) should prevent termination.  *See* *id.* § 232.116(3)(c) ("The court need not terminate the relationship between the parent and the child if" it finds "that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.").  The father argues that termination will disrupt the integrity of the family unit and runs the risk that the children will be broken up when it comes time for them to be adopted.  The father's arguments are not persuasive.  The integrity of the family unit has already been disrupted due to the ongoing parental deficiencies of both parents.  The

father has gone long periods of time where he has been absent from the lives of these children, including being so detached from the children that he was unaware of the deplorable conditions in the mother's home. Even when he resurfaced, his refusal to take even basic steps to demonstrate that he is a viable placement option have resulted in him progressing no further than supervised visits with the children. While there is a risk the two children may not be adopted into the same family, there is no reason to believe that such an unfortunate outcome will result. Even in the unlikely event it does, the children would still be better in separate adoptive homes than being returned to a father who neglected them for much of their lives. We find termination of the father's rights to be in the children's best interest.

We also reject the father's argument that any bond between the father and children should prevent termination of his rights. *See id.* While the children appear to have a bond with the father, his extended absence from their short lives limits this bond. Further, the record shows the children exhibit signs of stress before and after visitation. As explained above, the father failed to demonstrate he is ready to progress beyond supervised visits after seventeen months of involvement from the DHS. Therefore, his bond with the children does not preclude termination.

## V. Refusal to Submit to Testing and Evaluation

The father argues the juvenile court had no authority to order him to submit to drug testing without probable cause, and, in using his refusal against him, the father's constitutional rights were violated.[7] *See* U.S. Const. amend. IV (prohibiting

---

[7] In addition to his argument on unreasonable search and seizure, the father's petition to us also mentions the fifth amendment. *See* U.S. Const. amend. V. This mention of the fifth amendment is not sufficient for us to consider such rights on

unreasonable searches and seizures). In his petition to us, he presents the issue as whether "the taking of a bodily specimen, particularly breath, blood, hair or urine, *without probable cause*, constitutes an unreasonable search and seizure."

In analyzing this issue, we need not decide whether the father has the right claimed because, even if it is assumed that he has such a right, that right was not violated for multiple reasons. First, the only way the father's refusal to cooperate by submitting to drug testing was used against him was that such refusal formed part of the basis for limiting the father's interaction with the children to supervised visits. He was not physically forced to submit to testing, and no effort was made to hold him in contempt of court for disobeying the order for testing. The fact that the father suffered an adverse consequence from exercising his claimed rights does not constitute a violation of the claimed rights. *See In re C.H.*, 652 N.W.2d 144, 150 (Iowa 2002) ("Contrary to [the father's] assertions, a person's exercise of a constitutional right *may* indeed have consequences. One such consequence may be a person's failure to obtain treatment for his or her problems.").

Second, once the juvenile court adjudicated the children to be in need of assistance, the court had statutory authority to order the father to submit to drug testing because his ability to care for the children was at issue. *See* Iowa Code § 232.98(2) ("Following an adjudication that a child is a child in need of assistance, the court may after a hearing order the physical or mental examination of the parent . . . if that person's ability to care for the child is at issue.").

---

appeal. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

Third, the father's entire argument is based on the premise that the order for drug testing lacked probable cause. We do not decide whether the probable cause standard applies in this context. That said, there was ample reason for ordering the father to submit to drug testing. As detailed above, both children tested positive for marijuana at birth. The father was the subject of a March 2017 bridge order entered in conjunction with closing of the previous CINA proceedings. The bridge order included factual findings that the father had ongoing substance-abuse issues and unmet mental-health issues. Just over one year later, the children returned to the attention of the DHS because of the mother's deplorable behavior in caring for them. However, the fact that the mother's atrocious parenting led to the DHS involvement did not mean that the DHS or the juvenile court should have assumed that the father had fixed his problems over the prior year. The DHS and the juvenile court justifiably continued to have the same concerns with the father that they had over a year earlier when the bridge order was entered. His recent prescription for narcotic pain medicine raised additional concerns. As a result of those concerns, the court ordered the father to engage in the very simple task of submitting to drug testing to help determine whether he had improved to the point of being a viable placement option. He refused to submit to such testing. As a result, he never established that he had adequately addressed his drug use or that he was a viable placement option. Under these circumstances, there was no violation of his claimed rights, assuming he possessed those rights.

Finally, it was not just the father's refusal to submit to drug testing that caused concern to the DHS workers and the juvenile court. His refusal to submit to a mental-health evaluation also raised concerns. On appeal, the father raises

no constitutional challenge to the order for mental-health evaluation and treatment. Even with no consideration of the evidence of the father's drug use, our de novo review of the record finds clear and convincing evidence supporting termination, as described above. Therefore, even if it was assumed for the sake of argument that it was improper to order the father to submit to drug testing, the father was not prejudiced by such impropriety because the other evidence in the record, including his refusal to submit to a mental-health evaluation and treatment, independently support termination of his parental rights by clear and convincing evidence.

## VI.    Conclusion

We find the State proved the statutory grounds for terminating the father's parental rights to both children, termination is in the children's best interest, and consideration of the father's refusal to participate in drug testing does not violate the constitutional prohibition on unreasonable search and seizure. Therefore, we affirm the termination of the father's parental rights to both children.

**AFFIRMED.**