**IN THE COURT OF APPEALS OF IOWA**

No. 24-1808
Filed February 5, 2025

**IN THE INTEREST OF E.V.-C.,**
**Minor Child,**

**L.V., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Buena Vista County, Kristal L. Phillips, Judge.

        A father appeals the termination of his parental rights. **AFFIRMED.**

        Alexandria Celli Smith of Sandy Law Firm, Spirit Lake, for appellant father.

        Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

        Lisa Mazurek, Cherokee, attorney and guardian ad litem for minor child.

        Considered by Chicchelly, P.J., and Buller and Langholz, JJ. Sandy, J., takes no part.

**PER CURIAM.**

A six-week-old son was removed from his parents' custody after a domestic-violence incident in the home.[1]  Over the next eleven months, the father irregularly engaged with services, never completed any drug tests requested by the Iowa Department of Health and Human Services ("HHS"), and eventually stopped attending treatment altogether.  He also continued to reconcile with the mother, despite her history of violence and her ongoing drug use.  All the while, the young son remained in foster care.  So the juvenile court terminated the father's parental rights to the son.

The father appeals, raising several issues that were never litigated before the juvenile court.  Considering only the two issues properly before us, we affirm the termination.  The father's lack of progress with his substance-use treatment, his refusal to submit to drug testing, and his failure to progress beyond fully supervised visits precluded returning the son to his custody at the time of the hearing.  As for the son's best interest, the son is doing well with his foster family and has bonded with his foster brother.  Without any evidence showing the father has changed course or reengaged with substance-use treatment, the son should not be left to languish indefinitely in foster care.  Thus, we affirm the juvenile court.

## I.  Factual Background and Proceedings

In November 2023, when the son was about six weeks old, his mother assaulted his father while carrying the son in her arms.  He was promptly removed

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public.  *Compare* Iowa Code § 232.147(2) (2024), *with id.* §§ 602.4301(2), 602.5110.

from his parents' custody and placed with a foster family. The mother was charged with child endangerment and assault causing bodily injury. The mother also tested positive for methamphetamine and stated the father gave her the drugs. The father admitted using methamphetamine in the past but denied any current use. In December, the son was adjudicated in need of assistance.

At first, the father engaged with services.[2] He obtained a substance-use evaluation, which recommended outpatient services. He also regularly met with family-centered services, and his supervised visits with the son went well. But the father backslid after resuming contact with the mother around February 2024. He started missing treatment appointments and appeared to be under the influence during family treatment court. He also began seeing the mother more often, even though he was aware of the mother's ongoing drug use. By June, he was no longer attending substance-use treatment, had stopped responding to HHS and other service providers, and had not visited the son in two months. And despite conceding a substance-use problem, the father never completed any of HHS's requested drug tests. So the State petitioned to terminate his parental rights.

Over the summer, the father resumed supervised visits with the son. Indeed, the father missed only one visit—because of a job interview—between July and September. Still, the father continued to maintain a relationship with the mother. And he never resumed substance-use treatment or submitted a drug test.

After a one-day hearing, the juvenile court terminated the father's parental rights to the son under paragraphs "e" and "h" of Iowa Code section 232.116(1).

---

[2] Although the mother's parental rights to the son were also terminated, she has not appealed. So we limit our discussion to the father.

The court found the father "has not reengaged in treatment or put forth any effort to complete the responsibilities described in the case plan." Nor was the father able to resume custody of the child, despite HHS's efforts to address his substance use and provide resources to improve his parenting. As for the son's best interest, the court noted the son had spent nearly his entire life with his foster family, relies on them for all of his needs, and has had inconsistent contact with the father. So severing the parent–child relationship would not harm the son, and would provide him with a safe, caring family. Finally, the court found none of the permissive exceptions under section 232.116(3) applied. The father appeals.

## II. Error Preservation

The State disputes whether the father preserved error, arguing the father's minimal conduct during the termination hearing forecloses contesting termination on appeal. During the hearing, the father declined to testify, though he was represented by counsel. Counsel, in turn, briefly cross-examined the HHS social worker but did not offer any evidence or present argument.

We recently clarified that because Iowa Rule of Civil Procedure 1.904(1) applies to juvenile proceedings, parents may dispute sufficiency of the evidence for the first time on appeal. *See In re J.R.*, No. 24-0942, 2025 WL 52738, at *1–2 (Iowa Ct. App. Jan. 9, 2025) (en banc); *see also In re A.R.*, 316 N.W.2d 887, 888 (Iowa 1982) (instructing "the sufficiency of the evidence may be challenged on appeal even though not raised below"). But we will not bend our error-preservation principles to reach beyond what is required by rule or precedent.

Reviewing the father's petition, we may consider his challenge to whether sufficient evidence supported terminating his parental rights under paragraphs "e"

or "h" of Iowa Code section 232.116(1), and that termination was in his son's best interest. *Id.* But for the remaining issues that are adequately briefed,[3] the father's passive approach to the termination hearing has consequences. *See J.R.*, 2025 WL 52738, at *2. The father never advocated for applying any permissive exception under section 232.116(3), despite carrying the burden of proof; did not request more time to work toward reunification in lieu of termination; never disputed HHS's reasonable efforts; and never argued for a guardianship. So we will not address these issues for the first time on appeal. *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994).

### III. Statutory Grounds for Termination

To terminate a parent's parental rights, juvenile courts follow a three-step process. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021). First, the State must prove by clear and convincing evidence that one or more statutory grounds justifies termination. *Id.* Second, the State must similarly prove termination is in the child's best interest. *Id.* And third, the parent carries the burden to show a permissive exception precludes termination. *Id.* Our review is de novo, though we are mindful of the juvenile court's preferred fact-finding position and give weight to its findings. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

---

[3] We do not decide whether error is preserved on the father's claim of ineffective assistance of counsel—or consider its merits—because he has waived it on appeal by failing to cite any legal authority in his petition on appeal. *See In re E.M.*, No. 24-0642, 2024 WL 3518286 at *3 (Iowa Ct. App. July 24, 2024). We would also find this claim not properly before us, even if it had been adequately briefed, because this appeal from the termination proceedings cannot challenge the conduct of counsel in the related but separate child-in-need-of-assistance case. *See In re N.L.P.*, No. 12-0528, 2012 WL 1612551, at *1 n.3 (Iowa Ct. App. May 9, 2012).

The juvenile court terminated the father's parental rights under paragraphs "e" and "h" of Iowa Code sections 232.116(1). First considering paragraph "h," the first three elements are not in dispute—the son was under three years old, was adjudicated in need of assistance, and had been removed from the home for more than six of the last twelve months. *See* Iowa Code § 232.116(1)(h)(1)–(3). And on the fourth element, we find clear and convincing evidence shows the son could not be returned to his father's custody at the time of the termination hearing. *Id.* § 232.116(1)(h)(4); *see also In re A.M.*, 843 N.W.2d at 111.

Leading up to the termination hearing, the father made good progress with attending visitation. Unfortunately, that was the only area in which he meaningfully improved. During eleven months of these proceedings, the father refused to submit drug tests, did not comply with his substance-use treatment, and inconsistently engaged with services. Because the father declined to testify or offer any evidence at the hearing, nothing in the record suggests that this behavior will change. *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[A] good prediction of the future conduct of a parent is to look at the past conduct.").

What's more, the father never progressed beyond fully supervised visits. *See In re L.H.*, 13 N.W.3d 627, 629 (Iowa Ct. App. 2024) (finding a parent "never progressed beyond fully-supervised visits, which also prevented an immediate return of custody"). Absent that "necessary progression, we cannot say the children could have returned to the" father's custody at the time of the termination hearing. *Id.* Thus, we affirm termination under paragraph "h." And because that ground is adequately supported, we need not consider paragraph "e." *See In re L.H.*, 949 N.W.2d 268, 270 (Iowa Ct. App. 2020).

## IV.     Best Interest

Turning to the second step, to guide our best-interest analysis, we look to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The father's argument largely turns on the relatively short period between removal and termination. He posits that terminating his parental rights will damage the son and that the court should have allowed more time before permanently severing their relationship.

We are always mindful of "the harms that occur when children are taken from their parents." *In re D.C.*, No. 24-1258, 2024 WL 4503211, at *3 (Iowa Ct. App. Oct. 16, 2024). Yet we must also be mindful of the need to keep "children from languishing in foster care." *In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially). As we often stress, "[t]he crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). And our child-welfare laws demand that parents "assume their responsibilities quickly" and prioritize "prompt efforts to terminate parental rights if those deadlines are not met." *J.E.*, 723 N.W.2d at 801.

We agree that termination is in the son's best interest. At the time of the hearing, the son had been removed from his father's custody beyond the minimum time required by statute, was one year old, and was doing well with his foster family. He is on track developmentally and has bonded with his foster brother. The father has had roughly a year to address his substance use but failed to do so—even after facing the prospect of termination. Without any evidence that the

father could provide the son with a stable, safe home, and given the young son's

extended placement in foster care, we agree the time has come for permanency.

**AFFIRMED.**

Chicchelly, P.J., and Buller, J., concurs; Langholz, J., concurs specially.

**LANGHOLZ, Judge** (concurring specially).

I join all of the majority opinion except for footnote 3, holding that the father waived his ineffective-assistance-of-counsel claim by failing to cite legal authority in his petition on appeal. If this were an ordinary civil or criminal appeal, I would agree that the father's limited argument on this issue would be deemed a waiver. But this is an expedited child-welfare appeal without normal briefing. So I would hold that that the father's argument sufficiently—even if just barely—presented this claim for our consideration. And seeing no other barrier to reaching the merits, I would hold that the claim fails because the father cannot show any prejudice.

## I. Waiver of Claim on Appeal

We generally demand much from appellate advocates in their briefing. That's especially so for an appellant's attorney, who "seeks to overturn the judgment rendered below." *King v. State*, 818 N.W.2d 1, 11–12 (Iowa 2012). In addition to a host of other technical and substantive requirements, each claim of error on appeal must have a separate argument section "containing the appellant's contentions and the reasons for them with citations to the authorities relied on and references to the pertinent parts of the record." Iowa R. App. P. 6.903(2)(a)(8)(3). And our rule governing appellants' briefs expressly warns: "Failure to cite authority in support of an issue may be deemed waiver of that issue." *Id.* All properly so.

But this rule does not apply to expedited child-welfare appeals like this one. *See generally In re C.M.*, 652 N.W.2d 204, 208–09 (Iowa 2002). Unless we request supplemental full briefing, parents in these appeals do not file a brief. *See* Iowa Rs. App. 6.205(1), 6.902(1)(d). Rather, they file a streamlined petition on appeal. *See* Iowa R. App. P. 6.201(1). This filing—which can't exceed twenty

pages and must be filed within fifteen days of appealing—follows a template form designed to let an attorney quickly give us the information we need to consider the appeal. *See* Iowa R. App. P. 6.201(1)(b)–(d). That form asks the parent to separately state a concise issue statement for every issue raised on appeal. *See* Iowa R. App. P. 6.1401—Form 5. And it instructs the parent to "[i]nclude supporting legal authority for each issue raised, including authority contrary to appellant's case, if known." *Id.* Yet parties need only "substantially comply" with the form. *See* Iowa R. App. P. 6.201(1)(d). And there's no similar waiver warning for failing to cite legal authority in *this* governing rule or the form.[4]

Indeed, in rejecting constitutional challenges to this expedited appellate process, we and the supreme court have relied on the reduced demands on parents and on the greater role of the appellate court to step in and fill the gap with a full de novo review of the record. *See In re L.M.*, 654 N.W.2d 503, 506 (Iowa 2002); *C.M.*, 652 N.W.2d at 211–12; *In re R.K.*, 649 N.W.2d 18, 21 (Iowa Ct. App. 2002) (en banc). So too have we relied on our ability to "order full briefing" if an issue requires expanded argument as further "protection to the parties" from constitutional harm. *R.K.*, 649 N.W.2d at 21; *see also* Iowa R. App. P. 6.205(1).

---

[4] True, some panels of our court have applied rule 6.903(2)(a)(8)(3) and its predecessors in holding that arguments are waived in expedited child-welfare appeals despite its textual limitation to only full appellant's briefs. *See, e.g.*, *In re E.M.*, No. 24-0642, 2024 WL 3518286, at *3 (Iowa Ct. App. July 24, 2024). But the only published cases of any court that I've found applying that rule to child-welfare appeals are from *before* the adoption of the expedited appellate rules when that rule did still apply to such appeals. *See, e.g.*, *In re W.R.C.*, 489 N.W.2d 40, 41 (Iowa Ct. App. 1992). So none of these cases is binding—or persuasive—authority for applying that rule now. *See In re S.O.*, 967 N.W.2d 198, 206 (Iowa Ct. App. 2021); Iowa R. App. P. 6.904(2)(a)(2). Plus, even when that rule *did* apply, the supreme court has been generous in its application to child-welfare appeals. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

In his petition on appeal, the father states that one of the four separate issues presented for appeal is that he "received ineffective assistance of prior counsel at the onset of the case." Under a heading of "[s]upporting legal authority" he includes two paragraphs of argument about what happened and why he contends those facts amount to ineffective assistance that led to termination of his parental rights. As discussed below, I do not find the argument convincing. But I find it existing. And it is sufficiently fleshed out—not merely "[a] broad, all encompassing argument"—so that I can analyze its merit without crafting the father's advocacy for him. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). And remember, the point of a petition on appeal is "to raise issues for appeal rather than arguing issues in a full appellate brief." *R.K.*, 649 N.W.2d at 21.

To be sure, the father does not cite a case setting out the standard for ineffective assistance of counsel—nor any case or statute at all in his discussion of this issue. And, of course, it would have been preferable that he had. But the ineffective-assistance-of-counsel standard is well settled. *See In re A.R.S.*, 480 N.W.2d 888, 891 (Iowa 1992) (citing *Strickland v. Washington*, 466 U.S. 668, 687–98 (1984)). And it is readily apparent as the authority on which his argument relies. The absence of a case citation for that basic proposition did not hinder the State's response nor my review. To the contrary, the two paragraphs of argument are *more* helpful than if the father had merely included a case citation. So making the absence of an authority fatal to considering the merits elevates form over substance—especially being mindful of the streamlined and expedited appellate process here. Because he distinctly raised the issue and sufficiently explained his argument, the father has not waived his ineffective-assistance-of-counsel claim.

## II.      Scope of Termination Appeal

The majority sees another barrier to reaching the merits too.  It notes that the claim is "not properly before us, even if it had been adequately briefed, because this appeal from the termination proceedings cannot challenge the conduct of counsel in the related but separate child-in-need-of-assistance case."  True, a parent cannot belatedly challenge a child-in-need-of-assistance adjudication—with ineffective-assistance arguments or otherwise—by appealing a termination order.  *See In re N.L.P.*, No. 12-0528, 2012 WL 1612551, at *1 n.3 (Iowa Ct. App. May 9, 2012).  But the father is not challenging the child-in-need-of-assistance adjudication.  So "the principles of res judicata" underlying the precedent relied on by the majority have no applicability here.  *Id.*

The father challenges only the termination order.  He indeed claims the ineffective assistance occurred before the termination petition was filed.  But he argues that because his counsel did not provide proper advice to him or advocate *to HHS* at that critical juncture, HHS did not let him progress with his visitation to have more contact with the son.  And he contends that lack of progress led to the termination order that he is properly appealing.  It's not clear to me that the father could have raised this claim through an appeal from any order in the child-in-need-of-assistance proceeding.  Again, he is not alleging that the district court would have declined to adjudicate his son in need of assistance but for his attorney's conduct.  Rather, he alleges that he could have progressed with HHS to less supervised visits.  And that lack of progress certainly played a role in the ultimate termination of his parental rights.  What's more, we have previously considered ineffective-assistance-of-counsel claims based on conduct in a child-in-need-of-

assistance proceeding—even directly based on the adjudication and the failure to appeal that order—in a termination appeal when the parent claimed that conduct led to the termination order. *See In re T.S.*, 868 N.W.2d 425, 431–32 (Iowa Ct. App. 2015). I would thus likewise hold that the father's ineffective-assistance-of-counsel claim is within the scope of this termination appeal.[5]

### III.   Merits of the Ineffective-Assistance-of-Counsel Claim

Turning then to the merits of that claim, the father argues that he received ineffective assistance from his former counsel before the filing of the termination petition that the father contends led to the termination order. In April 2024, shortly before a scheduled dispositional hearing, the father's former counsel moved to continue the hearing because of illness. The juvenile court granted the continuance, sua sponte withdrew her representation, and appointed a new attorney in her place. According to the father, the prior counsel's illness reduced their communication at a critical time—when the father was on the cusp of progressing from fully supervised visits to semi-supervised visits. So he argues he received ineffective assistance.

But counsel only provides ineffective assistance if "(1) counsel's performance was deficient, and (2) actual prejudice resulted." *T.S.*, 868 N.W.2d at 431. By April, the father had reconciled with the mother, retreated from services,

---

[5] The State also argues that the father failed to preserve error on his ineffective-assistance-of-counsel claim because his counsel did not raise that claim in the district court. But given the nature of an ineffective-assistance-of-counsel claim and the lack of any collateral proceeding analogous to postconviction relief for these termination proceedings, appellate courts have typically been generous in reaching the merits of such claims on direct appeal. *See, e.g., In re T.P.*, 757 N.W.2d 267, 273 (Iowa Ct. App. 2008); *In re J.P.B.*, 419 N.W.2d 387, 390 (Iowa 1988). And so, I would follow that same approach and reach the merits.

and was skipping treatment appointments.  Without proof of sobriety, his visits would never have progressed beyond fully supervised.  And the father identifies no facts tying his refusal to submit drug tests with any conduct or lack of communication by counsel.  So the father cannot show the required prejudice.

Bottom line, I have little trouble discerning the father's argument that he received ineffective assistance of counsel or deciding that it fails on the merits.  And given the unique appellate process for this child-welfare appeal and our generous approach to error preservation on ineffective-assistance-of-counsel claims in these appeals, I would thus err on the side of reaching those merits.